Filed 8/1/13

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| HAROLD ROSE et al., | ) | |
| | ) | |
| Plaintiffs and Appellants, | ) | |
| | ) | S199074 |
| v. | ) | |
| | ) | Ct.App. 2/2 B230859 |
| BANK OF AMERICA, N.A., | ) | |
| | ) | Los Angeles County |
| Defendant and Respondent. | ) | Super. Ct. No. BC433460 |
| _____ | ) | |

May a claim of unlawful business practice under California's unfair competition law be based on violations of a federal statute, after Congress has repealed a provision of that statute authorizing civil actions for damages? We hold that it may, when Congress has also made it plain that state laws consistent with the federal statute are not superseded.

## DISCUSSION

The federal Truth in Savings Act (TISA; 12 U.S.C. § 4301 et seq.) regulates banks' disclosures to customers.[1] For 10 years beginning in 1991, TISA allowed civil damages to be sought for failure to comply with its requirements. (Former § 4310; Fed. Deposit Ins. Corp. Improvement Act of 1991, Pub.L. No.

_____

[1] Further unspecified statutory references are to title 12 U.S.C.

102-242, § 271 (Dec. 19, 1991) 105 Stat. 2236, 2340.)[2] The provision authorizing lawsuits was repealed in 1996, effective September 30, 2001. (Omnibus Consolidated Appropriations Act of 1997, Pub.L. No. 104-208, § 2604(a) (Sept. 30, 1996) 110 Stat. 3009-470.) This case involves the effect of that repeal on claims brought under the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.).

The UCL sets out three different kinds of business acts or practices that may constitute unfair competition: the unlawful, the unfair, and the fraudulent. (Bus. & Prof. Code, § 17200; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech*).) Violations of

---

[2]    Former section 4310(a) stated:

" Except as otherwise provided in this section, any depository institution which fails to comply with any requirement imposed under this Act or any regulation prescribed under this Act with respect to any person who is an account holder is liable to such person in an amount equal to the sum of —

"(1) any actual damage sustained by such person as a result of the failure;

"(2)(A) in the case of an individual action, such additional amount as the court may allow, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or

"(B) in the case of a class action, such amount as the court may allow, except that —

"(i) as to each member of the class, no minimum recovery shall be applicable; and

"(ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same depository institution shall not be more than the lesser of $500,000 or 1 percent of the net worth of the depository institution involved; and

"(3) in the case of any successful action to enforce any liability under paragraph (1) or (2), the costs of the action, together with a reasonable attorney's fee as determined by the court."

federal statutes, including those governing the financial industry, may serve as the predicate for a UCL cause of action. (See *Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1480; *Roskind v. Morgan Stanley Dean Witter & Co.* (2000) 80 Cal.App.4th 345, 352.)

After the expiration of section 4310, plaintiffs filed a class action against Bank of America (the Bank), alleging unlawful and unfair business practices based on violations of TISA disclosure requirements.[3] Plaintiffs asked for restitution, injunctive relief, and attorney fees. The Bank demurred, arguing that Congress had expressly prohibited private rights of action under TISA. The trial court sustained the demurrer with leave to amend, which plaintiffs declined. On appeal from the ensuing judgment, the Court of Appeal affirmed, reasoning that Congress's repeal of former section 4310 reflected its intent to bar any private action to enforce TISA.

Plaintiffs contend the Court of Appeal erroneously failed to consider the effect of TISA's savings clause, which preserves the authority of states to regulate bank disclosures so long as state law is consistent with TISA. (§ 4312.)[4] They

---

[3]     Plaintiffs asserted violations of sections 4301(b) and 4305(c), and parts 230.4(b), 230.3(a), and 230.5(a) of the TISA regulations found in title 12 of the Code of Federal Regulations.

[4]     Section 4312 provides: "The provisions of this subtitle do not supersede any provisions of the law of any State relating to the disclosure of yields payable or terms for accounts to the extent such State law requires the disclosure of such yields or terms for accounts, except to the extent that those laws are inconsistent with the provisions of this subtitle, and then only to the extent of the inconsistency. The Bureau [of Consumer Financial Protection] may determine whether such inconsistencies exist." (See also 12 C.F.R § 230.1(d); *id*., § 230, appen. C.)

In 1993, the California Legislature repealed deposit disclosure requirements formerly provided in the Financial Code, noting they were ineffective to the extent

*(Footnote continued on next page.)*

argue that because the UCL borrows TISA's requirements, it is entirely consistent with the federal law.  Plaintiffs characterize the question as one of federal preemption.  The Bank responds that considerations of preemption are irrelevant, and instead frames the issue as one of congressional intent to disallow private enforcement of TISA.

Whether framed in terms of preemption or not, the issue before us is a narrow one.  The Bank and the courts below have taken the position that Congress ruled out any private enforcement of TISA by repealing former section 4310.  However, considerations of congressional intent favor plaintiffs.  By leaving TISA's savings clause in place, Congress explicitly approved the enforcement of state laws "relating to the disclosure of yields payable or terms for accounts . . . except to the extent that those laws are inconsistent with the provisions of this subtitle, and then only to the extent of the inconsistency."  (§ 4312.)  The UCL is such a state law.

The Bank contends the UCL is not a statute "relating to the disclosure of yields payable or terms for accounts" under section 4312.  It concedes that the California Legislature could have provided a private right of action in a statute otherwise identical to TISA.  (See *Bates v. Dow Agrosciences LLC* (2005) 544 U.S. 431, 447-448 (*Bates*) [provision of state law remedy does not make state law inconsistent with federal statute that provides no remedy].)  Indeed, California statutes that simply adopt federal requirements have served as the bases for UCL causes of action.  (See *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1086-

*(Footnote continued from previous page.)*

they differed from federal law and "the federal deposit disclosure laws provide adequate safeguards for consumers."  (Stats. 1993, ch. 107, § 3, pp. 1151-1152.)

1087 [UCL claim based on Health & Saf. Code, § 110100, subd. (a)];[5] *Washington Mutual Bank v. Superior Court* (1999) 75 Cal.App.4th 773, 786-787 [UCL claim based on former Fin. Code, § 50505].[6])  In the Bank's view, however, the UCL may not be employed to borrow *directly* from a federal statute if Congress has decided not to allow private enforcement of the federal law.

That argument fails.  When Congress permits state law to borrow the requirements of a federal statute, it matters not whether the borrowing is accomplished by specific legislative enactment or by a more general operation of law.  (*Bates*, *supra*, 544 U.S. at p. 447 [state law need not explicitly incorporate federal standards to meet requirement of equivalence];  *In re Jose C.* (2009) 45 Cal.4th 534, 546 [distinction between state laws imposing independent criminal punishment and those incorporating federal criminal law is "immaterial" and "purely formal"].)  The Bank's position elevates form over substance, and ignores the familiar principles on which the UCL operates.

---

**5**     Health and Safety Code section 110100, subdivision (a) provides:  "All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."  As noted in *Farm Raised Salmon Cases*, *supra*, 42 Cal.4th at page 1086, other provisions of the Health and Safety Code use language identical to the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 301 et seq.).  The Bank contends we recognized in *Farm Raised Salmon Cases* that a UCL claim cannot be based on a federal statute that does not itself provide for a private right of action.  Not so.  There we considered only a cause of action premised on Health and Safety Code violations.  We had no occasion to consider whether the claim might have been founded on federal law.

**6**     Former Financial Code section 50505 provided:  "Any person who violates any provision of the federal Real Estate Settlement Procedures Act, as amended (12 U.S.C.A. Sec. 2601 et seq.), or any regulation promulgated thereunder, violates this division."  (Stats. 1994, ch. 994, § 7, p. 5789.)

Contrary to the Bank's insistence that plaintiffs are suing to enforce TISA, a UCL action does not "enforce" the law on which a claim of unlawful business practice is based. "By proscribing 'any unlawful' business practice, [Business and Professions Code] 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the [UCL] makes *independently* actionable. [Citations.]" (*Cel-Tech*, *supra*, 20 Cal.4th at p. 180, italics added.) In *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 570 (*Stop Youth Addiction*), we explained the independent nature of a UCL action. There the UCL claim was based on alleged violations of Penal Code section 308, which bans the sale of cigarettes to minors. The defendant contended the suit was barred because Penal Code section 308 and the Stop Tobacco Access to Kids Enforcement Act (STAKE Act; Bus. & Prof. Code, §§ 22950- 22959) "embodie[d] the Legislature's intent to create a comprehensive, exclusive scheme for combating the sale of tobacco to minors." (*Stop Youth Addiction*, at p. 560.) We rejected this argument, and emphasized that the plaintiff was enforcing the UCL, not the statutes underlying their claim of unlawful business practice.

"[A]s we have long recognized, it is in enacting the UCL itself, and not by virtue of particular predicate statutes, that the Legislature has conferred upon private plaintiffs 'specific power' (*People v. McKale* [(1979)] 25 Cal.3d [626,] 633) to prosecute unfair competition claims." (*Stop Youth Addiction*, *supra*, 17 Cal.4th at p. 562.) The Attorney General, as amicus curiae, argued that allowing the suit to go forward would "transform the criminal law into a body of civil law giving rise to private causes of action." (*Id.* at p. 566.) We disagreed. "[Plaintiff] does not contend a 'private right of action' exists for it (or any other private plaintiff) to proceed under Penal Code section 308. [Plaintiff] seeks relief from alleged unfair competition, not to enforce the Penal Code." (*Stop Youth Addiction*, at p. 566.)

6

We returned to the same point in *Stop Youth Addiction* in response to the defendant's argument that the UCL claim encroached on public prosecutors' prerogative to decide whether to bring criminal prosecutions under Penal Code section 308. "[A]s previously discussed, [plaintiff] is not suing under, or to enforce, Penal Code section 308 or the STAKE Act. Rather, [plaintiff] seeks to enforce *the UCL* by means of restitution and an injunction forbidding Lucky to continue selling cigarettes to children. . . . [W]e agree with [plaintiff that] the fact a UCL action is based upon, or may even promote the achievement of, policy ends underlying section 308 or the STAKE Act, does not, of itself, transform the action into one for the 'enforcement' of section 308." (*Stop Youth Addiction*, *supra*, 17 Cal.4th at p. 576, fn. omitted.)

Thus, we have made it clear that by borrowing requirements from other statutes, the UCL does not serve as a mere enforcement mechanism. It provides its own distinct and limited equitable remedies for unlawful business practices, using other laws only to define what is "unlawful." (See *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1150 [UCL provides equitable avenue for prevention of unfair business practices, with streamlined procedures and limited remedies].) The UCL reflects the Legislature's intent to discourage business practices that confer unfair advantages in the marketplace to the detriment of both consumers and law-abiding competitors.

In this case, the Bank makes the same analytical error we identified in *Stop Youth Addiction*. Plaintiffs are not suing to enforce TISA, nor do they seek damages for TISA violations. Instead, they pursue the equitable remedies of restitution and injunctive relief, invoking the UCL's restraints against unfair competition. Doing so is entirely consistent with the congressional intent reflected in the terms and history of TISA. Congress expressly left the door open for the operation of state laws that hold banks to standards equivalent to those of TISA.

The Bank relies on *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, *Stop Youth Addiction*, *supra*, 17 Cal.4th 553, *Cel-Tech*, *supra*, 20 Cal.4th 163, and *Farm Raised Salmon Cases*, *supra*, 42 Cal.4th 1077, for the proposition that a plaintiff may not employ the UCL to "plead around" a legislative determination foreclosing private enforcement of another statute. While that proposition is valid as far as it goes, it does not go far enough to help the Bank. When Congress repealed section 4310, foreclosing private actions for damages under TISA, it left section 4312 intact, expressly permitting private actions under state laws consistent with TISA. Thus, the abolition of the TISA remedy does not amount to a bar against UCL claims. It is settled that a UCL action is not precluded "merely because some other statute on the subject does not, itself, provide for the action or prohibit the challenged conduct. To forestall an action under the [UCL], another provision must actually 'bar' the action or clearly permit the conduct." (*Cel-Tech*, *supra*, 20 Cal.4th at p. 183; see *Zhang v. Superior Court* (Aug. 1, 2013, S178542) __ Cal.4th __ [pp. 12-14]; *Stop Youth Addiction*, *supra*, 17 Cal.4th at p. 566.)

The Bank claims Congress's intent to bar private actions under TISA is demonstrated by its rejection, in 2001, of a proposed amendment seeking to restore the provision for civil actions formerly found in section 4310. (H.R. No. 1057, 107th Cong., 1st Sess., § 3, p. 4 (2001).) However, this failed amendment says nothing about Congress's intent with respect to *state law* claims. The retention of section 4312, allowing states to maintain laws consistent with TISA, demonstrates the intent to permit state law remedies.

The Bank also relies on federal case law. It notes that an action brought under 42 U.S.C. section 1983 may not be premised on violations of a federal statute that does not authorize private suits, if "Congress [acted] in a manner that would suggest a prohibition on private enforcement." (*Almond Hill School v. U.S.*

8

*Dept. of Agriculture* (9th Cir. 1985) 768 F.2d 1030, 1035 (*Almond Hill*).) "An intent to foreclose private remedies may be inferred if the remedial devices in the statute are 'sufficiently comprehensive' to suggest exclusivity." (*Ibid*.; see *Middlesex County Sewerage Authority v. National Sea Clammers Association* (1981) 453 U.S. 1, 19-20; *Vinson v. Thomas* (9th Cir. 2002) 288 F.3d 1145, 1155.) Here, TISA's preservation of state law alternatives does not "suggest exclusivity." (*Almond Hill*, at p. 1035.) [7] Furthermore, the UCL, unlike 42 U.S.C. section 1983, is meant to provide remedies *cumulative* to those established by other laws, absent express provision to the contrary. (Bus. & Prof. Code, § 17205.) We have long recognized that the existence of a separate statutory enforcement scheme does not

---

[7] We note that, insofar as *Almond Hill* rested its conclusion on the idea that the enforcement scheme of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA; 7 U.S.C. § 136 et seq.) demonstrates Congress's intent to foreclose *any* private remedy (see *Almond Hill*, *supra*, 768 F.2d at pp. 1037-1038), it has been undermined by the Supreme Court's subsequent holding in *Bates*, *supra*, 544 U.S. at pages 447-448, that state law requirements consistent with FIFRA are enforceable. Similarly, *Bates* casts doubt on the validity of an unpublished federal case cited by the Bank and the Court of Appeal below, which held that a UCL claim could not be premised on FIFRA violations because Congress had barred private enforcement actions. (*Hartless v. Clorox Co.* (S.D.Cal., Nov. 2, 2007, No. 06CV2705) 2007 WL 3245260, pp. *3-*4.)

The Bank mentions another unpublished federal court opinion cited by the Court of Appeal, *Banga v. Allstate Ins. Co.* (E.D. Cal., Mar. 31, 2010, No. 5-08-1518) 2010 WL 1267841. (See *Farm Raised Salmon Cases*, *supra*, 42 Cal.4th at p. 1096, fn. 18 [unpublished federal court opinions are citable, but not necessarily persuasive].) The *Banga* court ruled that UCL claims based on violations of the Fair Credit Reporting Act (FCRA; 15 U.S.C. § 1681 et seq.) were either preempted by the FCRA or precluded by FCRA provisions establishing an absolute bar to relief. (*Banga*, at pp. *3-*4.) Here, the Bank does not argue preemption and, as we have explained, fails to show that TISA bars relief under state law.

preclude a parallel action under the UCL. (*Stop Youth Addiction*, *supra*, 17 Cal.4th at pp. 572-573, citing cases.)**8**

The Bank refers as well to *Gunther v. Capital One, N.A.* (E.D.N.Y. 2010) 703 F.Supp.2d 264. Gunther sought damages for breach of contract, alleging that TISA requirements had been incorporated by his bank account agreement. The court dismissed this claim, holding that the agreement's terms effected no such incorporation. It also noted that allowing the claim would be contrary to Congress's intent in repealing former section 4310's private right of action. (*Gunther*, at pp. 270-271.) Here, however, we are not confronted with an attempt to incorporate TISA into the parties' contract to support a damages claim. Plaintiffs pursue the distinct restitutionary and injunctive remedies provided by the UCL, a state law enforceable under section 4312.

We need not consider whether the outcome would be different if the UCL permitted damage awards. As matters stand, the relief available under the UCL is quite different from the remedies formerly provided in TISA, which included actual damages, limited additional amounts, costs, and attorney fees. (See fn. 2, *ante*.) Private plaintiffs suing under the UCL may seek only injunctive and restitutionary relief, and the UCL does not authorize attorney fees. (See *Zhang v. Superior Court*, *supra*, __ Cal.4th __ [pp. 4-6].)

---

**8** One court has held that the UCL does not apply to claims arising from securities transactions, relying in part on the existence of "the comprehensive regulatory umbrella of the Securities and Exchange Commission over such transactions." (*Bowen v. Ziasun Technologies, Inc.* (2004) 116 Cal.App.4th 777, 789, fn. 9.) Whatever the scope and merits of that holding may be (see *Betz v. Trainer Wortham & Co.* (N.D.Cal. 2011) 829 F.Supp.2d 860, 866; *In re Charles Schwab Corp. Sec. Litig.* (N.D.Cal. 2009) 257 F.R.D. 534, 553), it does not apply here. Congress expressly contemplated the enforcement of state laws consistent with TISA. (§ 4312.)

We hold that TISA poses no impediment to plaintiffs' UCL claim of unlawful business practice.[9]

DISPOSITION

The Court of Appeal's judgment is reversed.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**WERDEGAR, J.**
**LIU, J.**
**MAURO, J. \***

---

**9**      The Court of Appeal also determined that plaintiffs' claim of *unfair* business practice was not viable. We do not reach this question. Both plaintiffs' petition for review and their opening brief are limited to questions related to their ability to borrow TISA violations for purposes of their claim of *unlawful* business practice. For the first time in their reply brief, plaintiffs argue that the court below erred with respect to their unfair business practice claim. Even this belated contention is not fully briefed. The Court of Appeal identified three separate tests for "unfairness" under the UCL, and applied all three of them. Plaintiffs assert in cursory fashion that the court misapplied one of these tests. We decline to address this claim, which is neither properly raised nor sufficiently briefed. (See *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 421, fn. 4; Cal. Rules of Court, rules 8.504(b)(1), 8.516(b)(1), 8.520(b)(2)(B), (3).)

---

\*      Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Rose v. Bank of America, N.A.
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 200 Cal.App.4th 1441
**Rehearing Granted**


_____

**Opinion No.** S199074
**Date Filed:** August 1, 2013
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Jane L. Johnson


_____

**Counsel:**

The Rossbacher Firm, Henry H. Rossbacher, Jeffrey Alan Goldenberg, James S. Cahill and Talin K. Tenly for Plaintiffs and Appellants.

Adam Keats; Law Office of Richard R. Wiebe and Richard R. Wiebe for Center for Biological Diversity, Inc., as Amicus Curiae on behalf of Plaintiffs and Appellants.

Arbogast Bowen and David M. Arbogast for Consumer Attorneys of California and the National Consumer Law Center as Amici Curiae on behalf of Plaintiffs and Appellants.

Dennis J. Herrera, City Attorney (San Francisco), Danny Chou, Chief of Special and Complex Litigation, Kristine Poplawski and Erin Bernstein, Deputy City Attorneys; Carmen A. Trutanich, City Attorney (Los Angeles) and Tina Hess, Deputy Chief Complex and Special Litigation, for San Francisco City Attorney and Los Angeles City Attorney as Amici Curiae on behalf of Plaintiffs and Appellants.

Reed Smith, Margaret M. Grignon, Scott H. Jacobs and Zareh A. Jaltorossian for Defendant and Respondent.

Horvitz & Levy, Lisa Perochet, Jeremy B. Rosen and Jason R. Litt for Chamber of Commerce of the United States of America and California Chamber of Commerce as Amici Curiae on behalf of Defendant and Respondent.

Fred J. Hiestand for the Civil Justice Association of California as Amicus Curiae on behalf of Defendant and Respondent.

Leland Chan for California Bankers Association and American Bankers Association as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Henry H. Rossbacher
The Rossbacher Firm
811 Wilshire Boulevard, Suite 1650
Los Angeles, CA  90017-2666
(213) 895-6500

Margaret M. Grignon
Reed Smith
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-2900
(213) 457-8000