Filed 10/16/14  (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SOLUS INDUSTRIAL INNOVATIONS, LLC, et al., | |
| Petitioners, | G047661 |
| v. | (Super. Ct. No. 30-2012-00581868) |
| THE SUPERIOR COURT OF ORANGE COUNTY, | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUGMENT |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

It is ordered that the opinion filed September 22, 2014, be modified as follows:

On page 20, in the second sentence of the Disposition beginning with "The superior court is directed" delete "without leave to amend" so the sentence reads:

The superior court is directed to vacate the portion of its October 3, 2012 order which overruled Solus's demurrer to the district attorney's third and fourth causes of action, and enter a new order sustaining Solus's demurrer to those two causes of action.

The modification does not change the judgment. The Petition for Rehearing is denied.


                                        RYLAARSDAM, ACTING P. J.

WE CONCUR:


BEDSWORTH, J.


THOMPSON, J.

Filed 9/22/14  (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SOLUS INDUSTRIAL INNOVATIONS, LLC, et al., | |
| Petitioners, | G047661 |
| v. | (Super. Ct. No. 30-2012-00581868) |
| THE SUPERIOR COURT OF ORANGE COUNTY, | O P I N I O N |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Petition granted.

Jones Day, Brian A. Sun and Frederick D. Friedman, for Petitioners.

No appearance for Respondent.

Tony Rackauckas, District Attorney, and Kelly A. Roosevelt, Deputy District Attorney, for Real Party in Interest.

Amy D. Martin and Kathryn J. Woods for the Department of Industrial Relations Division of Occupational Safety and Health as Amicus Curiae on behalf of the Real Party in Interest.

Lawrence H. Kay for Construction Employers Association as Amicus Curiae on behalf of Petitioners

\*          \*          \*

In this case we are called on to determine whether federal law preempts the effort by a district attorney to recover civil penalties under California's Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.) based on an employer's alleged violation of workplace safety standards. Petitioners Solus Industrial Innovations, Emerson Power Transmission Corp., and Emerson Electric Co. (collectively Solus) contend the trial court erred by overruling their demurrer to two causes of action filed against them by Respondent, the Orange County District Attorney, alleging a right to recover such penalties. Solus argues that federal workplace safety law (Fed/OSHA) preempts any state law workplace safety enforcement mechanism which has not been specifically incorporated into the state workplace safety plan approved by the U.S. Secretary of Labor (the Secretary).

The district attorney contends that once a state workplace safety plan has been approved by the Secretary, as California's was, the state retains significant discretion to determine how it will enforce the safety standards incorporated therein, and thus the state may empower prosecutors to enforce those standards through whatever legal mechanism is available when such a case is referred to them.

The trial court agreed with the district attorney and consequently overruled Solus's demurrer to the two causes of action based on the UCL. But the court also

2

certified this issue as presenting a controlling issue of law suitable for early appellate review under Code of Civil Procedure section 166.1.  Solus then filed a petition for writ of mandate with this court, asking us to review the trial court's ruling.  After we summarily denied the petition, the Supreme Court granted review and transferred the case back to us with directions to issue an order to show cause.

We issued the order to show cause and then an initial opinion concluding the trial court's ruling was incorrect on the merits.  We reasoned that under controlling law, any part of a state plan not expressly approved is preempted, and that California's workplace safety plan, as approved by the Secretary, does not include any provision for civil enforcement of workplace safety standards by a prosecutor through a cause of action for penalties under the UCL.  In the course of our opinion, we noted that the UCL, in its current form, was not even in effect when California's plan was approved.

The California Supreme Court then granted review, and transferred the matter back to this court with directions to reconsider the matter in light of former Civil Code section 3370.1 (former section 3370.1) repealed by stats. 1977, ch. 299, § 3, p. 1204 – which was in effect when California's plan was approved – providing for the imposition of similar penalties based on acts of unfair competition.  Having done so, we again conclude that the district attorney's reliance on the UCL to address workplace safety violations is preempted.

FACTS

As is typical when we review the propriety of the trial court's ruling on a demurrer, "'we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.'"  (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792.)

3

Solus makes plastics at an Orange County manufacturing facility.  In 2007, Solus installed an electric water heater intended for *residential use* at the facility.  In March 2009, that water heater exploded, killing two workers instantly in what district attorney refers to as an "untimely and horrific death."

After the incident, California's Division of Occupational Safety and Health (Cal/OSHA) opened an investigation and determined the explosion had been caused by a failed safety valve and the lack of "any other suitable safety feature on the heater" due to "manipulation and misuse."  Based on Cal/OSHA's investigation, it charged Solus with five "'[s]erious'" violations of Title 8 of the California Code of Regulations in an administrative proceeding, including violations of:  "(1) section 467(a) for failure to provide a proper safety valve on the heater; (2) section 3328(a) for permitting the unsafe operation of the water heater; (3) section 3328(b) for improperly maintaining the water heater; (4) section 3328(f) for failing to use good engineering practices when selecting and using the unfit residential water heater in the extrusion operations; and (5) section 3328(h) for permitting unqualified and untrained personnel to operate and maintain the water heater."  Cal/OSHA also cited Solus with one "'[w]illful'" violation of the same regulation, based on its "willful failure to maintain the residential water heater in a safe operating condition."

Because the incident involved the death of two employees, and there was evidence that a violation of law had occurred, Cal/OSHA's Bureau of Investigation forwarded the results of its internal investigation to the district attorney as required by Labor Code section 6315, subdivision (g).  In March 2012, the district attorney filed criminal charges against two individuals, including Solus's plant manager and its maintenance supervisor, for felony counts of violating Labor Code section 6425, subdivision (a). (See *People v. Faulkinbury* (Super. Ct. Orange County, 2012, No.

4

12CF0698).) No party challenges the district attorney's standing to bring these or other appropriate criminal prosecutions.

The district attorney also filed the instant civil action against Solus. The complaint contains four causes of action, all based on the same worker health and safety standards placed at issue in the administrative proceedings.

The first two causes of action are not at issue in this writ proceeding. The third cause of action alleges that Solus's failure to comply with workplace safety standards amounts to an unlawful, unfair and fraudulent business practice under Business and Professions Code section 17200, and the district attorney requests imposition of civil penalties as a consequence of that practice, in the amount of up to $2,500 per day, per employee, for the period from November 29, 2007 through March 19, 2009.

The fourth cause of action alleges Solus made numerous false and misleading representations concerning its commitment to workplace safety and its compliance with all applicable workplace safety standards, and as a result of those false and misleading statements, Solus was allegedly able to retain employees and customers in violation of Business and Professions Code section 17500. Again, the district attorney requests imposition of civil penalties as a consequence of this alleged misconduct, in the amount of up to $2,500 per day, per employee, for the period from November 29, 2007 through March 19, 2009.

Solus demurred to these two causes of action, contending they were preempted under Fed/OSHA, because a prosecutor's pursuit of civil penalties under the UCL is not part of California's workplace safety plan approved by the Secretary. The trial court disagreed, and overruled the demurrer to the district attorney's two causes of action based on violations of the UCL.

The trial court subsequently granted a request to certify the preemption issue as appropriate for early appellate review under Code of Civil Procedure section

5

166.1, finding "the federal preemption issue raised in [Solus's] demurrer as to the Third and Fourth Causes of Action in the Complaint presents a controlling question of law as to which there are substantial grounds for difference of opinion and that appellate resolution of this issue may materially advance the conclusion of the litigation."

Solus filed a petition for writ of mandate with this court, which we summarily denied. After our denial, the Supreme Court granted review and transferred the case back to us with directions to issue an order to show cause. On May 10, 2013, we issued the order to show cause.

DISCUSSION

*1. Standard of Review*

"We apply a de novo standard of review because this case was resolved on demurrer [citation] and because federal preemption presents a pure question of law [citation]." (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10.) However, "[i]t is well established that the party who asserts that a state law is preempted bears the burden of so demonstrating." (*Id.* at p. 1088.) And further, "[t]he interpretation of the federal law at issue here is further informed by a strong presumption against preemption." (*Ibid.*)

*2. The Fed/OSHA Preemption*

"'The basic rules of preemption are not in dispute: Under the supremacy clause of the United States Constitution (art. VI, cl. 2), Congress has the power to preempt state law concerning matters that lie within the authority of Congress. [Citation.] In determining whether federal law preempts state law, a court's task is to discern congressional intent. [Citation.] Congress's express intent in this regard will be

6

found when Congress explicitly states that it is preempting state authority. [Citation.] Congress's implied intent to preempt is found (i) when it is clear that Congress intended, by comprehensive legislation, to occupy the entire field of regulation, leaving no room for the states to supplement federal law [citation]; (ii) when compliance with both federal and state regulations is an impossibility [citation]; or (iii) when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." [Citations.]'" (*Farm Raised Salmon Cases, supra,* 42 Cal.4th at p. 1087.)

On the matter of workplace safety regulation, the federal government's intent to preempt is clear: The federal Occupational Safety and Health Act of 1970 (29 U.S.C. § 651 et seq; (OSH Act)), and the standards promulgated thereunder by Fed/OSHA were designed "'to assure so far as possible every working man and woman in the Nation safe and healthful working conditions.' [Citation.] To that end, Congress authorized the Secretary of Labor to set mandatory occupational safety and health standards applicable to all businesses affecting interstate commerce, 29 U.S.C. § 651(b)(3), and thereby brought the Federal Government into a field that traditionally had been occupied by the States." (*Gade v. National Solid Wastes Management Association* (1992) 505 U.S. 88, 96 [112 S.Ct. 2374, 120 L.Ed.2d 73] (*Gade*).)

However, "Congress expressly saved two areas from federal pre-emption. . . . [T]he Act does not 'supersede or in any manner affect any workmen's compensation law [and] the Act does not 'prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no [federal] standard is in effect.'" (*Gade, supra*, 505 U.S. at pp. 96-97.)

Moreover, Congress also gave states the option of side-stepping federal preemption entirely, by allowing any state which "desires to assume responsibility for *development and enforcement* therein of occupational safety and health standards relating

7

to any occupational safety or health issue [to] submit a State plan for the development of *such standards and their enforcement*." (29 U.S.C. § 667(b), italics added; *Gade, supra*, 505 U.S. at p. 97.) "The section . . . removes federal preemption so that the state may exercise its own sovereign powers over occupational safety and health." (*United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.* (1982) 32 Cal.3d 762, 772.)

But "[t]wo prerequisites to such [state] regulation are that the state law be 'at least as effective' as the federal standard covering the same subject matter and that the state law be incorporated in a state plan submitted to and approved by the federal Secretary of Labor (the Secretary). [Citation.]" (*California Lab. Federation v. Occupational Safety & Health Stds. Bd.* (1990) 221 Cal.App.3d 1547, 1551 (*California Labor Federation*).) However, if the proposed state plan incorporates standards which are distinct from the federal ones, "[t]he Secretary is not required to approve such a plan unless in her judgment [the state] 'standards, when applicable to products which are distributed or used in interstate commerce, are required by compelling local conditions and do not unduly burden interstate commerce.'" (*Id.* at pp. 1551-1552.) The state plan must designate "a [s]tate agency or agencies as the agency or agencies responsible for administering the plan throughout the [s]tate" (29 U.S.C. § 667(c)(1)) and "contain[] satisfactory assurances that such agency or agencies have or will have the legal authority and qualified personnel necessary for the enforcement of such standards." (29 U.S.C. § 667(c)(4).)

Further, the Secretary may rescind approval of the state plan "[w]henever the Secretary finds, after affording due notice and opportunity for a hearing, that in the administration of the State plan there is a failure to comply substantially with any provision of the State plan (or any assurance contained therein) . . . ." (29 U.S.C. § 667(f).)

8

Finally, if the state makes changes to its occupational safety and health laws, those changes must be formally incorporated into its approved workplace safety plan or be preempted. (*California Lab. Federation v. Occupational Safety and Health Stds. Bd., supra*, 221 Cal.App.3d at p. 1559 [writ issued to compel the Department of Industrial Relations to formally incorporate the provisions of Proposition 65 into its plan, and submit it to the Secretary for approval, to avoid preemption of those provisions as applied to the workplace]; see 29 C.F.R. § 1952.175, listing federally approved changes made to California's approved plan.)

*3. The Cal/OSHA Workplace Safety Plan*

As explained in *California Labor Federation*, "In 1973, the Legislature enacted the California Occupational Safety and Health Act (Cal/OSHA). [Citation.] Section 107 of Cal/OSHA states in pertinent part: 'The purpose of this act is to allow the State of California to assume responsibility for development and enforcement of occupational safety and health standards under a state plan pursuant to Section 18 [29 United States Code section 667] of the Federal Occupational Safety and Health Act of 1970 (Public Law 91-596) which was enacted December 29, 1970.' (Stats. 1973, ch. 993, § 107, pp. 1954-1955.)" (*California Lab. Federation v. Occupational Safety and Health Stds. Bd., supra*, 221 Cal.App.3d at p. 1552.)

The federal regulation approving California's workplace safety plan is detailed, and describes the plan as incorporating an enforcement component that includes "prompt notice to employers and employees of alleged violations of standards and abatement requirements, *effective remedies against employers*, and *the right to review alleged violations*, abatement periods*, and proposed penalties with opportunity for employee participation in the review proceedings . . . .*" (29 C.F.R. 1952.170(c), italics added.) The approval regulation also specifies "[t]he State's program will be enforced *by*

9

*the Division of Industrial Safety of the Department of Industrial Relations"* and "*[a]dministrative adjudications will be the responsibility of the California Occupational Safety and Health Appeals Board.*"  (29 C.F.R. 1952.170(a), italics added.)  The regulation does allow other agencies to be involved in the enforcement effort, but requires that "[i]nter-agency agreements to provide technical support to the program will be fully functioning within 1 year of plan approval" (29 C.F.R. § 1952.173(d).)  It then confirms, pursuant to that requirement, that "formal interagency agreements were negotiated and signed between the Department of Industrial Relations and the State Department of Health (June 28, 1973) and between the State Department of Industrial Relations and the State Fire Marshal (August 14, 1973)."  (29 C.F.R. § 1952.174(b).)

That plan description is entirely consistent with Labor Code section 144, subdivision (a), which expressly requires that "[t]he authority of any agency, department, division, bureau or any other political subdivision other than the Division of Occupational Safety and Health *to assist in* the administration *or enforcement* of any occupational safety or health standard, order, or rule adopted pursuant to this chapter *shall be contained in a written agreement with the Department of Industrial Relations or an agency authorized by the department to enter into such agreement.*"  (*Ibid.*, italics added.)

*4.  The UCL*

California's "UCL defines 'unfair competition' as 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'  [Citation.]  By proscribing 'any unlawful' business act or practice (*ibid*.), the UCL '" borrows"' rules set out in other laws and makes violations of those rules independently actionable."  (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370.)

10

Actions for relief under the UCL may be initiated by a public prosecutor. (Bus. & Prof. Code, § 17204.) Available remedies for violation of the UCL include (1) restitution and injunctive relief, which can be pursued by either a public prosecutor or a private party who has suffered injury in fact, or (2) civil penalties, which can only be pursued by a public prosecutor. (Bus. & Prof. Code, §§ 17203, 17206, subd. (a).) These UCL remedies are "cumulative . . . to the remedies or penalties available under all other laws of this state." (Bus. & Prof. Code, § 17205.)

The purpose of the UCL is to "provide[] an equitable means through which both public prosecutors and private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices. . . . [T]he 'overarching legislative concern [was] to provide a streamlined procedure for the prevention of ongoing or threatened acts of unfair competition.' [Citation.] Because of this objective, the remedies provided are limited." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1150.)

## 5. *Preemption of the UCL Causes of Action in This Case*

Our assessment of whether the district attorney's UCL causes of action are preempted by federal law begins with the observation that the UCL was enacted in 1977 (Stats. 1977, ch. 299, § 1, p. 1202), which is *after* the Secretary initially approved California's workplace safety plan. Hence, there is no basis to infer that reliance on the UCL, in its current form, could have been contemplated by the Secretary as part of the initial decision approving California's plan. And while the district attorney points out that former section 3370.1, which was in effect from 1972 to 1977 (added by stats. 1972, ch. 1004, § 2, p. 2021; repealed by stats. 1977, ch. 299, §§ 3, 4, p. 1204.) also provided for imposition of a similar civil penalty based on acts of unfair competition, he makes no claim that the availability of such a penalty, or its potential use in connection with

11

violations of workplace safety laws, was ever brought to the attention of the Secretary in connection with California's plan.

Indeed, after the Supreme Court's transfer of this case back to us, with directions to reconsider our decision in light of former section 3370.1, we requested that the parties provide us with supplemental briefs addressing that specific issue, as well as whether former section 3370.1 was ever actually applied to penalize unfair competition arising out of violations of workplace safety laws (either before or after California's workplace safety plan was approved in 1973).

In his brief, the district attorney first concedes "[t]here are insufficient historical records" to demonstrate that former section 3370.1 was ever relied upon by prosecutors to penalize unfair competition arising out of violations of the workplace safety laws prior to 1973, when the Secretary approved California's workplace safety plan.

And while the district attorney does claim that prosecutors relied on former section 3370.1 to penalize unfair competition arising out of violations of the workplace safety laws *after* the Secretary's 1973 approval of California's plan, he supports that assertion solely by referencing a record of nonspecific "civil actions taken by prosecutors following referrals from the [Division of Occupational Safety and Health's Bureau of Investigations]" which even he acknowledges dates back only to 1995 – i.e., 18 years *after* former section 3370.1 was superseded by the current UCL in 1977. Thus, that evidence, even if it were otherwise appropriate for us to consider, would not support the district attorney's contention.

Finally, in response to our query about whether former section 3370.1 was ever brought to the attention of the Secretary in connection with California's proposed workplace safety plan, the district attorney argues that the Secretary is *presumed* to have known about it. That assertion, however, suffers from several analytical flaws. First, the

12

presumption the district attorney relies upon is that "[t]he legislature is presumed to know existing law." (*Arthur Andersen v. Superior Court* (1998) 67 Cal.App.4th 1481, 1500.) But that rule refers to *our own state legislature's* presumed knowledge of existing California law when it enacts a new statute. It does not establish that members of the federal government's executive branch are also presumed to know the entirety of California law – let alone how California's laws of general application might be employed to address workplace safety issues.

Second, the district attorney suggests the Secretary would have been aware of the relevance of former section 3370.1 to our state's workplace safety plan through our Supreme Court's decision in *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d. 94 (*Barquis*). But that case does not address the potential use of unfair competition law in connection with regulating workplace safety. Instead, the court was concerned with the wholly unrelated issue of whether a collection agency's alleged practice of knowingly and willfully filing actions in improper counties would qualify as an unlawful business practice. In the course of deciding that issue, the court merely notes that California's unfair competition law was amended in 1963, "to add the word 'unlawful' to the types of wrongful business conduct that could be enjoined." (*Id.* at p. 112.) The court then adds that "[a]lthough the legislative history of [the 1963] amendment is not particularly instructive, nevertheless, as one commentator has noted 'it is difficult to see any other purpose than to extend the meaning of unfair competition to anything that can properly be called a business practice and that at the same time is forbidden by law.' (Note, *Unlawful Agricultural Working Conditions as Nuisance or Unfair Competition* (1968) 19 Hastings L.J. 398, 408-409.)" (*Id.* at pp. 112-113, fn. omitted.) It is that commentator (a second year law student) – not the Supreme Court – who suggests in the cited law review article that California's unfair competition law might *also* be employed to address unlawful working conditions. The Supreme Court itself expresses no opinion on that issue.

13

Consequently *Barquis* cannot be viewed as a basis for imputing *presumptive knowledge* to the Secretary, back in 1973, that former section 3370.1 could be relied upon as a basis for imposing additional penalties on employers that violate workplace safety laws.

And third, even if we agreed the Secretary could fairly be taxed with *presumptive* knowledge that former section 3370.1 might be relied upon by prosecutors to impose additional penalties on employers that violate California's workplace safety laws, we would still conclude that such knowledge is insufficient to support an inference that the Secretary had *approved* the imposition of those penalties as part of California's plan. As we have explained, a state seeking to exempt itself from the federal preemption over workplace safety regulation must specifically inform the Secretary of its proposed plan, detailing both the "*standards [to be employed] and their enforcement*." (29 U.S.C. § 667(b), italics added; *Gade, supra*, 505 U.S. at p. 97.) That requirement cannot be fulfilled by simply asserting the Secretary is *presumed* to be familiar with the entirely of the California law and to understand how that law might be employed in connection with regulating workplace safety. If it were, the Secretary's *presumed* knowledge would effectively relieve California of any obligation to affirmatively disclose its plan.

Rather than claiming that reliance on UCL penalties as an additional remedy for wrongs associated with workplace safety violations was ever specifically included in California's approved plan, the district attorney simply relies on the "strong presumption against preemption" and argues Solus failed to establish Congress had any specific intention of "bar[ring] the People's prosecution" of these UCL causes of action. The district attorney asserts that the underlying violations of the workplace safety laws are "properly within the jurisdiction of the State of California to remedy" and "[a]s such, these violations are the proper subject matter" for him to prosecute as authorized by California law under the UCL. We find these contentions unpersuasive.

14

As we have already explained, Congress's intention to preempt essentially the entire field of workplace safety regulation (other than workers' compensation) was made clear when it passed the OSH Act.  (*Gade, supra*, 505 U.S. at p. 96.)  While the OSH Act does not preempt states from "'asserting jurisdiction under [s]tate law over any occupational safety or health issue *with respect to which no [federal] standard is in effect*'" (*id*. at p. 97, italics added), the district attorney has made no claim that this case involves any such discrete issue.  Consequently, we conclude federal preemption has been established.

The district attorney relies on *Farm Raised Salmon Cases, supra*, 42 Cal.4th 1077, to support its assertion that preemption is not established here.  But that case is distinguishable.  As our Supreme Court explained, the federal law at issue in *Farm Raised Salmon Cases* preempted only those state laws that "'establish . . . any requirement for the labeling of food . . . *that is not identical to the requirement* of'" federal law.  (*Id.* at p. 1086.)  Thus, the court concluded that to the extent California's laws established requirements which were identical to those established by federal law, its enforcement of those laws was *not preempted.*  (*Id.* at p. 1083 ["plaintiffs' claims for deceptive marketing of food products are predicated on state laws establishing independent state disclosure requirements 'identical to' the disclosure requirements imposed by the FDCA, something Congress explicitly approved"].)  The same cannot be said here.

By contrast to the federal law at issue *Farm Raised Salmon Cases*, the OSH Act *does not* allow states to *independently establish* workplace safety laws, even if those laws mirror federal law requirements.  Instead, the states' authority to establish and enforce any laws in this area is *expressly conditioned* on submission of a proposed state plan to the Secretary – a plan which reflects not only the state's establishment of appropriate workplace safety requirements, but also the manner in which those

15

requirements will be enforced and the remedies provided – and *the Secretary's approval* of that specific plan. In fact, unlike the federal law at issue in *Farm Raised Salmon Cases*, the OSH Act actually contemplates that states *could deviate* from established federal standards, as long as those deviations are approved by the Secretary. The Secretary retains explicit discretion to determine whether a state plan is appropriate, and to reject any state plan that, *in the Secretary's view*, incorporates standards which are either less effective than those established by the OSH Act or unduly burdensome to interstate commerce.

It is this retained federal power to approve or disapprove the state's laws which also distinguishes the federal preemption scheme at issue here from the one recently considered by our Supreme Court in *Rose v. Bank of America* (2013) 57 Cal.4th 390. In *Rose*, the issue was whether a private party's cause of action for restitution and injunctive relief under the UCL, based upon the defendant's alleged violations of the federal Truth in Savings Act (TISA) – a law which did not itself authorize any private enforcement – was preempted. The Supreme Court held it was not, because when Congress repealed TISA's provision allowing for private enforcement, it also "explicitly approved the enforcement of state laws 'relating to the disclosure of yields payable or terms for accounts . . . except to the extent that those laws are inconsistent with the provisions of this subtitle, and then only to the extent of the inconsistency.'" (*Id.* at p. 395.) The court then concluded that a private right of action under the UCL, based on an alleged violation of TISA, was not inconsistent with the provisions of TISA. (*Ibid.*)

In this case, however, freedom from federal preemption hinges not only on whether a state's proposed laws are "'at least as effective'" as those contained in the OSH act – a standard we might be able to assess – but also on whether they are "incorporated in a state plan submitted to and approved by the federal Secretary of Labor (the Secretary)." (*California Lab. Federation v. Occupational Safety and Health Stds. Bd.,*

16

*supra*, 221 Cal.App.3d at p. 1551.)  That latter requirement is not one we are empowered to dispose of.

Because the OSH Act allows a state to avoid federal preemption only if it obtains federal approval of its own plan, it necessarily follows that a state has no authority to enact and enforce laws governing workplace safety which fall outside of that approved plan.  The OSH Act expressly requires a state to comply with its approved plan, and allows the Secretary to rescind approval of the plan if the state fails to do so.  (29 U.S.C., § 667(f).)  Under this statutory scheme, we conclude the approved state plan operates, in effect, as a "safe harbor" within which the state may exercise its jurisdiction. It is only when the state stays within the terms of its approved plan, that its actions will not be preempted by federal law.

The district attorney's alternative argument is that even assuming preemption is established in the first instance, these UCL causes of action must be viewed as falling within the safe harbor created by California's approved state plan.  As he explains, "the California worker safety penalty statutes and regulations [underlying these UCL claims] are fully approved as part of California's State Plan and *any* action to enforce such laws is fully consistent with the goals of the federal mandate."  We cannot agree.

First, while it may be true that the penalty statutes and regulations underlying these UCL claims are included in the approved state plan, the district attorney is not seeking to directly enforce those approved penalties and regulations.  Instead, he is seeking to enforce *separate penalties under the UCL* which have *not been approved* for application in the otherwise preempted area of workplace safety regulation.  Second, the standard for assessing whether reliance on the UCL as a tool of enforcing workplace safety laws is preempted is not whether *we believe* it appears "consistent with the goals" of the OSH Act to do so.  It is the Secretary, not this court, which retains the discretion to

17

determine whether changes in the state's already approved enforcement plan are appropriate. Stated simply, avoidance of federal preemption is dependent upon the Secretary's approval, not ours.

And finally, we reject the district attorney's implicit assertion that any opportunity for *enhanced* enforcement of workplace safety regulations would necessarily be met with the Secretary's approval. As we have already noted, one of the grounds for the Secretary's rejection of a plan is the determination that some distinct state workplace safety provision would unduly burden interstate commerce. Indeed, as Solus points out, after the court in *California Labor Federation* issued a writ compelling the Department of Industrial Relations to formally incorporate the provisions of Proposition 65 into its workplace safety plan, so as to avoid preemption (*California Lab. Federation v. Occupational Safety and Health Stds. Bd., supra*, 221 Cal.App.3d 1547), the Secretary's approval of the new law for application in the workplace actually *limited* the scope of private enforcement that would otherwise have been permitted. As reflected in the analysis underlying that decision, "[m]any [who submitted responses to the Secretary's request for comment on the proposed modification] are companies which have experienced, or fear experiencing, private enforcement lawsuits under Proposition 65." (62 Fed.Reg. 31159, 31162 (June 6, 1997).) And after consideration of the concerns expressed by those commenters, the Secretary concluded that private enforcement of the substantive provisions included in Proposition 65 would be permissible only if restricted to in-state manufacturers. (62 Fed.Reg. 31159, 31178 (June 6, 1997).)

Here, the district attorney proposes to utilize the UCL as a means of imposing truly massive penalties against Solus, based specifically upon its alleged violation of workplace safety laws. Significantly, and in contrast to *Rose*, this is not merely a private UCL cause of action, brought by a litigant who has suffered injury in fact as a result of defendant's anti-competitive conduct, and who seeks restitution for that

18

injury and to enjoin such conduct in the future. This is instead an action, available only to a representative of the state, which is expressly intended *to penalize* a party for past misconduct. (Bus. & Prof. Code, § 17206, subd. (a) [civil penalties "shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General, by any district attorney, by any county counsel . . . or . . . by a city prosecutor"].)

Under each of these two UCL causes of action, the district attorney seeks to recover penalties of up to $2,500 *per day*, *per employee*, for the period from November 29, 2007 to March 19, 2009. That represents a potential penalty in excess of $1 million per employee, for each cause of action. And of course, the penalties available under the UCL are cumulative, and thus would be assessed *in addition to* whatever penalties were directly provided for under the Labor Code (and thus directly approved by the Secretary as part of California's state plan.) By contrast, as the district attorney acknowledges, the *total penalty* actually imposed by Cal/OSHA in the stayed administrative action arising out of these same violations was under $100,000.

It is not our place to assess whether such an extraordinary jump in the potential civil penalty an employer such as Solus might incur for workplace safety violations through application of the UCL is a good idea. For our purposes, it is enough to note that *it is* an extraordinary jump. And because it is, we conclude it will have to be the Secretary, and not this court, who assesses its merits.

In light of our determination that state regulation of workplace safety standards is explicitly preempted by federal law under the OSH Act, and that consequently California is entitled to exercise its regulatory power only in accordance with the terms of its federally approved workplace safety plan, we conclude the district attorney cannot presently rely on the UCL to provide an additional means of penalizing an employer for its violation of workplace safety standards.

19

DISPOSITION

The petition for writ of mandate is granted.  The superior court is directed to vacate the portion of its October 3, 2012 order which overruled Solus's demurrer to the district attorney's third and fourth causes of action, and enter a new order sustaining Solus's demurrer to those two causes of action without leave to amend.  Solus is to recover its costs in this writ proceeding.

**CERTIFIED FOR PUBLICATION**

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

THOMPSON, J.

20