Filed 3/13/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARINA IVANOFF, | B271035 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC591972) |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of
Los Angeles County, Holly E. Kendig, Judge.  Affirmed.
　　　Marina Ivanoff, in pro. per., for Plaintiff and Appellant.
　　　Bryan Cave, Douglas E. Winter, Andrea M. Hicks, and
Richard Steelman, Jr., for Defendant and Respondent.

_____

Marina Ivanoff appeals the order dismissing with prejudice her complaint against the Bank of America after the trial court sustained without leave to amend the Bank's demurrer to Ivanoff's complaint for violations of the federal Truth In Lending Act (TILA) (15 U.S.C. § 1601 et seq.) and California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), fraudulent omission/concealment and injunctive relief. Ivanoff argues the trial court improperly applied the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) based on her prior unsuccessful lawsuit against the Bank for breach of contract and contends she stated valid causes of action on the theories alleged in her complaint. Ivanoff also asserts the court erred in denying her an opportunity to amend her complaint. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Ivanoff's Initial Lawsuit for Breach of Contract*

Ivanoff originally sued Bank of America, N.A., successor to BAC Home Loans Servicing LP and Countrywide Bank, FSB, as well as ReconTrust Company, N.A., and Mortgage Electronic Registration Systems, Inc. (MERS), in July 2013, asserting causes of action for breach of contract, temporary restraining order and preliminary injunction, violation of the UCL, specific performance and equitable rescission.

In her complaint Ivanoff alleged she was the owner of a condominium in West Los Angeles, which she had purchased in 2004 with a loan secured by a deed of trust in favor of Washington Mutual Bank. Ivanoff refinanced her loan in 2006-2007 with Countrywide; the refinancing closed in December 2007. Contrary to representations made to her by Countrywide representatives, a penalty and fees were added to the loan

2

balance, increasing the amount she borrowed from $636,000 to $711,000. Those additional undisclosed amounts, included in breach of the parties' agreement, made the loan unaffordable; and Ivanoff defaulted.

In October 2010 Ivanoff sought a modification of the loan with the Bank, which had acquired Countrywide. Ivanoff alleged the Bank agreed to modify the loan, following successful completion of a trial loan modification agreement, with a new principal balance of $847.989.90, a new interest rate of 2 percent, an effective date of February 1, 2011 and a maturity date of January 1, 2051. Monthly loan payments were to be $2,567.93. However, according to Ivanoff, the Bank breached their loan modification agreement by adding an additional sum for required "escrow option insurance," which increased the monthly payment to $3,328.65.

The defendants demurred on numerous grounds. The trial court sustained the demurrer, in part, because Ivanoff had not alleged whether the agreements at issue were oral, written or implied, had not attached copies of any of the agreements and had not alleged the material terms of the agreements with the requisite detail. The court also found that certain of her claims, as pleaded, were barred by the statute of limitations or the statute of frauds.

Given leave to amend, Ivanoff filed a first amended complaint that was virtually identical to the original complaint and that, once again, did not attach any of the alleged agreements or describe their terms in any greater detail. The trial court sustained the defendants' demurrer to the first amended complaint without leave to amend, observing, "the opposition fails to address about eighty percent of the issues

3

raised (e.g., Statute of Limitations and Statute of Frauds), and fails to cite any governing law on point (e.g., tender, contract and injunction)." The court then explained that "'[c]ontentions are waived when a party fails to support them with reasoned argument and citations to authority.'"

The Court of Appeal affirmed. (*Ivanoff v. Bank of America* (May 13, 2015, B256462 [nonpub. opn.].) The court stated Ivanoff's brief was "blatantly deficient," containing no citation to the record and essentially no factual or legal analysis. The court then ruled, "Since Ivanoff has not demonstrated that the trial court erred, we are in no position to reverse its order." (*Ibid.*) In addition, because Ivanoff had made no attempt to demonstrate how she could amend her complaint to plead a viable claim, the Court of Appeal concluded leave to amend was not warranted.

2. *The Current TILA/Fraud Lawsuit*

On August 20, 2015, four weeks after the Supreme Court denied Ivanoff's petition for review in the initial lawsuit, Ivanoff again sued the Bank, ReconTrust and MERS, as well as two of the Bank's employees, in a complaint for violation of TILA, the UCL, fraudulent omission/concealment and injunctive relief. The general allegations of the complaint were identical to those in the prior lawsuit relating to the December 2007 refinancing and February 1, 2011 loan modification agreements. (As in her prior lawsuit, Ivanoff did not attach copies of the refinancing or loan modification agreements.)

Rather than alleging breach of contract, however, Ivanoff's new lawsuit alleged the Bank violated TILA by failing to make required disclosures with respect to the "escrow option insurance," which was surreptitiously added to Ivanoff's monthly loan payment obligation. Ivanoff additionally alleged the Bank's

4

violation of TILA was an unlawful business practice within the meaning of the UCL and the failure of its employees to disclose the loan modification agreement would include an additional monthly sum of $760.72 for "escrow option insurance" constituted fraudulent concealment. Had she known the true facts, Ivanoff alleged, she would have considered other financing options. Ivanoff also sought injunctive relief preventing a sale at foreclosure of her condominium.

The Bank demurred, contending Ivanoff's complaint was barred as a matter of law by the doctrines of claim preclusion and issue preclusion. The Bank argued Ivanoff was asserting the same primary right in both actions (claim preclusion) and the issues alleged had been actually litigated and decided against Ivanoff on the merits (issue preclusion). The Bank also argued in support of its demurrer that the claims for violation of TILA and fraud were time-barred; Ivanoff lacked standing to assert a UCL claim because she failed to allege she had lost money or property as a result of the Bank's actions; and the claim for an injunction against foreclosure was improper because injunctive relief is a remedy, not a cause of action. In her opposition to the demurrer Ivanoff emphasized she had not pleaded either violation of TILA or fraud in her prior lawsuit.

The trial court sustained the demurrer without leave to amend. The court ruled Ivanoff's claims were barred by res judicata, explaining "[t]he 'primary right' of Plaintiff in both actions—the right to be free from increased loan payments that were not agreed to—is the same, which means the present proceeding is on the same 'cause of action' as the prior proceeding." The court also ruled the claims were barred by collateral estoppel because her four causes of action "all involve

the same underlying issue—the validity of the increased loan payments that Plaintiff allegedly did not agree to." That issue, the trial court found, had already been litigated, decided and finalized in the prior litigation. Finally, the trial court agreed with the Bank that Ivanoff's claims independently fail: The TILA and fraud claims were barred by the governing statutes of limitation (one year and three years, respectively); Ivanoff lacked standing to bring a UCL claim; and the cause of action for injunctive relief was not a valid cause of action.

The order sustaining the demurrer and judgment of dismissal was filed March 3, 2016. Notice of entry was served on March 10, 2016. Ivanoff filed a timely notice of appeal.

## DISCUSSION

1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We liberally construe the pleading with a view to substantial justice between the parties (Code Civ. Proc., § 452; *Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1340; see *Schifando*, at p. 1081 [complaint must be read in context and

6

given a reasonable interpretation]); but, "[u]nder the doctrine of truthful pleading, the courts 'will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed.'" (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400; see *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 767 ["[w]hile the 'allegations [of a complaint] must be accepted as true for purposes of demurer,' the 'facts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence'"]; *SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83 ["[i]f the allegations in the complaint conflict with the exhibits, we rely on and accept as true the contents of the exhibits"].)

Although a general demurrer does not ordinarily reach affirmative defenses, it "will lie where the complaint 'has included allegations that *clearly* disclose some defense or bar to recovery.'" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183; accord, *Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1406; *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 224.) "Thus, a demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense." (*Casterson,* at p. 183; accord, *Favila,* at p. 224; see *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 [application of a statute of limitations based on facts alleged in a complaint is a legal question subject to de novo review].)

"'Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a

plaintiff to amend his [or her] complaint.""'" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970-971.)  We determine whether the plaintiff has shown "in what manner he [or she] can amend [the] complaint and how that amendment will change the legal effect of [the] pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)  "[L]eave to amend should *not* be granted where . . . amendment would be futile." (*Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685; see generally *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 373-374.)

   2.  *The Bank's Demurrer Was Properly Sustained Without Leave To Amend*
    a.  *Violation of TILA*
      i.  *The TILA claim is not subject to claim preclusion or issue preclusion*

The doctrine of res judicata has two aspects—claim preclusion and issue preclusion.  (*DKN Holdings LLC. v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*); *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.)  "*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.]  Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties [or those in privity with them] (3) after a final judgment on the merits in the first suit.  [Citations.]  If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*DKN Holdings*, at p. 824; accord, *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 (*Mycogen*); *Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507.)  The bar applies if the cause of action could have been brought,

8

whether or not it was actually asserted or decided in the first lawsuit. (*Busick v. Workermen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 974; *Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82.) The doctrine promotes judicial economy and avoids piecemeal litigation by preventing a plaintiff from """"splitting a single cause of action or relitigat[ing] the same cause of action on a different legal theory or for different relief."""" (*Mycogen*, at p. 897.)

The second aspect of res judicata, issue preclusion, historically referred to as collateral estoppel, "prohibits the relitigation of issues argued and decided in a previous case even if the second suit raises a different cause of action. [Citation.] Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*DKN Holdings, supra,* 61 Cal.4th at p. 824; accord, *Boeken v. Philip Morris USA, Inc., supra,* 48 Cal.4th at p. 797.) The doctrine applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*DKN Holdings*, at p. 825.) The doctrine differs from claim preclusion in that it operates as a conclusive determination of issues; it does not bar a cause of action. (*Ibid.*) In addition, unlike claim preclusion, issue preclusion can be raised by one who is not a party to the prior proceeding against one who was a party or his or her privy. (*Ibid.*; *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.) Moreover, even if the minimal requirements for issue preclusion are satisfied, courts will not apply the doctrine if policy considerations outweigh the doctrine's purpose in a particular case. (*Lucido*, at pp. 342-343.)

The trial court ruled Ivanoff's TILA claim was barred by both claim preclusion and issue preclusion, reasoning, as to claim preclusion, the primary right at issue in that cause of action and Ivanoff's initial breach of contract lawsuit was the same—"the right to be free from increased loan payments that were not agreed to"—and, as to issue preclusion, the validity of the increased loan payments had been actually litigated and necessarily decided in the first lawsuit.  Neither ruling is correct.

It is true that when two actions involving the same parties seek compensation for the same harm, "'they generally involve the same primary right.'" (*Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 558.)  But, not always:  "[D]ifferent primary rights may be violated by the same wrongful conduct." (*Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 342 [corporation's failure to indemnify may violate an employee's statutory right to indemnity under Corp. Code, § 317 and a separate contractual right to indemnity]; accord, *Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1172-1173 [uninsured employer's negligence may violate employee's distinct primary rights under workers' compensation and tort law].)  For example, in *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954-955, disapproved on another ground in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, footnote 4, the Supreme Court held an employer's racially discriminatory conduct may violate distinct primary rights under federal civil rights law and state tort law regarding defamation and intentional infliction of emotional distress.

Here, although Ivanoff's contract and TILA claims are largely based on the same set of underlying facts, the two actions do not involve the same primary rights.  "The purpose of the

10

TILA is to promote the 'informed use of credit' by consumers." (*Anderson Bros. Ford v. Valencia* (1981) 452 U.S. 205, 219 [101 S.Ct. 2266, 68 L.Ed.2d 783].) Thus, "the TILA's requirements principally focus on disclosures that creditors must make when offering credit." (*Lyon v. Chase Bank United States, N.A.* (9th Cir. 2011) 656 F.3d 877, 887; see 15 U.S.C. § 1601(a) ["[i]t is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices"].) The primary right at issue in Ivanoff's TILA cause of action, therefore, was the right to full disclosure of the material terms of her home loan refinancing by Countrywide and the subsequent loan modification by the Bank—in particular, the addition of a $30,000 penalty and fees of $37,000 to the outstanding loan balance as part of the December 2007 refinancing and the addition of an escrow option insurance charge of $760.72 to the monthly loan payment as part of the February 1, 2011 loan modification. That is a federal statutory right distinct from the common law right to have enforced only those contractual terms to which she had agreed, the claim presented by her initial lawsuit. Accordingly, the doctrine of claim preclusion does not bar Ivanoff's TILA claim. (See generally *Baral v. Schnitt* (2016) 1 Cal.5th 376, 395 ["the primary right theory is notoriously uncertain in application"].)

Similarly, even if the conclusory statement of grounds recited by the court when it sustained the Bank's demurrer to the first amended complaint in the initial lawsuit is properly considered a decision on the merits of Ivanoff's contract claim, the

11

adequacy of the disclosure of credit terms in the refinancing and loan modification agreements was neither actually litigated nor finally determined in that action. The doctrine of issue preclusion does not bar Ivanoff's TILA claim either.

ii. *The TILA claim is time-barred*

Although the trial court erred in concluding Ivanoff's TILA cause of action was barred by the doctrines of claim and issue preclusion, we agree Ivanoff's claim was untimely under TILA's governing limitations provisions, the court's alternative ground for sustaining the demurrer to the TILA cause of action.[1]

Ivanoff's right to recover damages for the Bank's alleged violation of TILA is set forth in title 15 of the United States Code section 1640(a)(1). Pursuant to title 15 of the United States Code section 1640(e), most TILA actions must be filed "within one year

---

[1]     Ivanoff's appellate brief does not address this alternate basis for the trial court's ruling sustaining the demurrer to the TILA cause of action. Ordinarily, courts treat an appellant's failure to raise an issue in her briefs as forfeiting that challenge. (See, e.g., *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal deemed forfeited or waived]; *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177-1178 ["[g]enerally, appellants forfeit or abandon contentions of error regarding the dismissal of a cause of action by failing to raise or address the contentions in their briefs on appeal"]; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 ["[c]ourts will ordinarily treat the appellant's failure to raise an issue in his or her opening brief as a waiver of that challenge"].) However, in light of Ivanoff's self-represented status and our responsibility to independently review the trial court's order sustaining the demurrer to her complaint, we address the merits of the limitations rulings.

from the date of the occurrence of the violation." However, claims alleging violations of title 15 of the United States Code section 1639, which requires specific disclosures and sets certain restrictions on loans secured by a mortgage, may be brought within three years of the date of violation. The violations here allegedly occurred in 2007 and 2010 (see, e.g., *Philibotte v. Nisource Corporate Services Co.* (1st Cir. 2015) 793 F.3d 159, 163 [date of occurrence for disclosure violations is the date the transaction was consummated]; *King v. California* (9th Cir. 1986) 784 F.2d 910, 915 [same]) and were allegedly first discovered by Ivanoff, according to her verified complaint, when she had her loan "forensically examined" in May 2011. (See *King*, at p. 915 ["the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action"].)

The refinancing transaction concluded in December 2007. The loan modification closed with an effective date of February 1, 2011. Ivanoff's current lawsuit was not filed until August 20, 2015. Accordingly, whether measured by title 15 of the United States Code section 1640(e)'s one-year or three-year limitations period, and even if equitable tolling was appropriate until May 2011 under the circumstances alleged, Ivanoff's TILA claim is time-barred.

b. *Violation of the UCL*

i. *Ivanoff adequately alleged injury in fact and has standing to pursue a UCL claim*

Unfair competition under the UCL means "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Written in the

13

disjunctive, Business and Professions Code section 17200 establishes "three varieties of unfair competition—acts or practices which are unlawful, unfair, or fraudulent." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180; accord, *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.)  "Violation of federal statutes, including those governing the financial industry, may serve as the predicate for a UCL cause of action." (*Rose v. Bank of America, N.A.* (2013) 57 Cal.4th 390, 394.)  Ivanoff's complaint alleged the Bank's violation of TILA constituted an unlawful business practice, an appropriate basis for her UCL claim.  The trial court's ruling the UCL cause of action was barred by claim and issue preclusion suffers from the same defects as its ruling with respect to the TILA claim itself.

The trial court alternatively ruled that Ivanoff lacked standing to pursue the UCL claim, an argument also advanced on appeal by the Bank, which contends Ivanoff cannot show any loss of money or property as a result of its allegedly unlawful business practices.  This ruling, too, was error.

"Historically, the UCL authorized any person acting for the interests of the general public to sue for relief notwithstanding any lack of injury or damages.  [Citation.]  At the November 2, 2004, General Election, the voters approved Proposition 64, which amended the UCL to provide that a private person has standing to bring a UCL action only if he or she 'has suffered injury in fact and has lost money or property as a result of the unfair competition.'" (*Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1382.)  "'In approving Proposition 64, the voters found and declared that the amendments were necessary to prevent abusive UCL actions by attorneys whose clients had

14

not been "injured in fact" or used the defendant's product or service, and to ensure "that only the California Attorney General and local public officials [are] authorized to file and prosecute actions on behalf of the general public."'" (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1345; see *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320 (*Kwikset*) ["[w]hile the substantive reach of [the UCL] remains expansive, the electorate has materially curtailed the universe of those who may enforce their provisions"].)

To satisfy Proposition 64 a plaintiff "must now establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e. *caused by*, the unfair practice or false advertising that is the gravamen of the claim." (*Kwikset*, *supra*, 51 Cal.4th at p. 322.) "Injury in fact" as used in Proposition 64 has the same meaning as under federal law: "'[A]n invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" [citations].'" (*Kwikset*, at p. 322.) Proposition 64, however, imposes the additional requirement that the plaintiff have lost money or property. (*Ibid.*) Indeed, loss of money or property—that is, "economic injury"—"is itself a classic form of injury in fact." (*Id.* at p. 323; see *id.* at p. 325, fn. 8 ["proof of lost money or property will generally satisfy the element of injury in fact"].) Economic injury may be shown in many ways including a plaintiff "surrender[ing] in a transaction more, or acquir[ing] in a transaction less, than he or she otherwise would have"; "hav[ing] a present or future property interest diminished"; and "be[ing] required to enter into a

15

transaction, costing money or property, that would otherwise have been unnecessary." (*Id*. at p. 323.)

Although Proposition 64's standing requirement is more restrictive than the federal law requirement because the injury must be economic, "the quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact . . . . [F]ederal courts have reiterated that injury in fact is not a substantial or insurmountable hurdle; as then Judge Alito put it: 'Injury-in-fact is not Mount Everest.' [Citation.] Rather, it suffices for federal standing purposes to "'allege[] some specific, 'identifiable trifle' of injury."'" (*Kwikset*, *supra*, 51 Cal.4th at p. 324.) "'"The basic idea that comes out in numerous cases is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation."'" (*Id*. at p. 325, fn. 7.)

Applying these principles in *Sarun v. Dignity Health* (2014) 232 Cal.App.4th 1159, this court held "the existence of an enforceable obligation, without more, ordinarily constitutes actual injury or injury in fact," even if the creditor has not begun any collection activity. (*Id*. at p. 1167; cf. *Adams v. Paul* (1995) 11 Cal.4th 583, 591, fn. 5 ["actual injury . . . may well precede quantifiable financial costs"].) Whether or not Ivanoff's allegation that she "stands to lose her home" adequately pleaded injury in fact under the UCL, Ivanoff also alleged, as a result of the Bank's unlawful business practices, she paid money to the Bank and received billings for increased monthly loan payments in excess of what she should have owed (or was told she would owe). No more is required to allege injury in fact.

16

ii. *The UCL claim is time-barred*

"Any action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued." (Bus. & Prof. Code, § 17208; see *Aryeh v. Canon Business Solutions, Inc.*, *supra*, 55 Cal.4th at p. 1192.)[2] Application of the UCL limitations provision "is governed by common law accrual rules to the same extent as any other statute." (*Aryeh*, at p. 1196.) Thus, absent special circumstances, the last element accrual rule is fully applicable in UCL cases. (See, e.g., *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110 ["[u]nder the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her"].)

In her verified first amended complaint in the initial contract lawsuit against the Bank, Ivanoff alleged her loan was

---

[2] The Bank did not demur to the UCL cause of action on statute of limitations grounds. Although an issue not raised in the trial court is typically forfeited, we can reach a ground for demurrer not raised below if it presents a pure question of law and the parties have been given an opportunity to address it. (See *Woods v. Fox Broadcasting Sub., Inc.* (2005) 129 Cal.App.4th 344, 357; *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 22.) Indeed, we must affirm an order of dismissal when there are no grounds for relief and the demurrer is meritorious as a matter of law. (*Trinkle v. California State Lottery* (1999) 71 Cal.App.4th 1198, 1201 [appellate court must affirm if the trial court's decision to sustain the demurrer was correct on any theory].) We invited supplemental letter briefs from the parties addressing whether Ivanoff's UCL cause of action was timely filed. The Bank responded; Ivanoff did not.

17

forensically examined in May 2011 (that is, after both the refinancing and the loan modification). That allegation was repeated in Ivanoff's verified complaint in the instant action. However, in the pending action Ivanoff also alleged she "did not discover the falsity/material omissions until several years later including May 2012." That inconsistent and unexplained allegation is properly ignored. (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 344 [the principle of "'"truthful pleading"'" requires us to disregard "facts that contradict the facts or positions that the plaintiff pleaded in earlier actions" or in a pleading in the same action, italics omitted]; accord, *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877-878; see *Hendy v. Losse* (1991) 54 Cal.3d 723, 742 ["'"Where a verified complaint contains allegations destructive of a cause of action, the defect cannot be cured in subsequently filed pleadings by simply omitting such allegations without explanation. In such a case the original defect infects the subsequent pleading so as to render it vulnerable to demurrer"'"; citations omitted].)[3]

_____

[3] "'When the plaintiff pleads inconsistently *in separate actions*, the plaintiff's complaint is nothing more than a sham that seeks to avoid the effect of a demurrer.'" (*Larson v. UHS of Rancho Springs, Inc.*, *supra*, 230 Cal.App.4th at p. 344.) "'The sham pleading doctrine is not "'intended to prevent honest complainants from correcting erroneous allegations . . . or to prevent correction of ambiguous facts.'" [Citation.] Instead, it is intended to enable courts "'to prevent an abuse of process.'" [Citation.]' [Citations.] Plaintiffs therefore may avoid the effect of the sham pleading doctrine by alleging an explanation for the conflicts between the pleadings.'" (*Ibid*.)

Moreover, Ivanoff has nowhere attempted to explain why the discrepancies between the sums she believed would be due following the 2007 refinancing and the February 1, 2011 loan modification and the amounts demanded by the Bank did not provide inquiry notice, if not actual notice, of the Bank's alleged unlawful business practices.  (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 815 ["[a] plaintiff seeking to utilize the discovery rule must plead facts to show his or her inability to have discovered the necessary information earlier despite reasonable diligence"]; see also *Union Carbide Corp. v. Superior Court* (1984) 36 Cal.3d 15, 25 ["'[I]f on the face of the complaint the action appears barred by the statute of limitations, plaintiff has an obligation to anticipate the [statute of limitations] defense and plead facts to negative the bar.'"].)  Whether measured by the dates of payment notices following the December 2007 refinancing or the February 2011 loan modification, or even the May 2011 date Ivanoff has twice identified, her UCL cause of action filed in August 2015 was time-barred.

        c.  *Fraudulent omission/concealment*

Ivanoff's fraudulent concealment claim, like her TILA and UCL claims, is based on the alleged nondisclosure of material terms of the loan refinancing (the addition of a $30,000 penalty and fees of $37,000 to the outstanding loan balance) and loan modification (the addition of an escrow option insurance charge to the monthly loan payment ).  A fraud cause of action, whether based on intentional misrepresentation or concealment, is governed by the three-year limitations period set forth in Code of Civil Procedure section 338, subdivision (d).  However, that provision also specifies, "The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved

19

party, of the facts constituting the fraud . . . ." (See *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1391; see also *Cleveland v. Internet Specialties West, Inc.* (2009) 171 Cal.App.4th 24, 31 ["the statute of limitations in a cause of action for fraud 'commences to run after one has knowledge of the facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry . . .'"].)  Whether measured by the receipt of payment notices that demanded a larger sum than she had anticipated, the May 2011 forensic examination of her loan, or even the purported May 2012 discovery of the Bank's "falsity/material omissions," Ivanoff's cause of action for fraud, not filed until August 20, 2015, is barred by section 338, subdivision (d)'s three-year limitations period.

### d.  *Injunctive relief*

"Injunctive relief is a remedy, not a cause of action. [Citations.]  A cause of action must exist before a court may grant a request for injunctive relief." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 65; accord, *City of South Pasadena v. Department of Transportation* (1994) 29 Cal.App.4th 1280, 1293 ["'A permanent injunction is merely a remedy for a proven cause of action.  It may not be issued if the underlying cause of action is not established.'"]; see *Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 618; *McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1159.)  Because none of Ivanoff's other causes of action may be maintained, her request for injunctive relief necessarily fails as well.

### e.  *Leave to amend*

Although Ivanoff correctly states the trial court abuses its discretion if it sustains a demurrer without leave to amend if the

pleading defect can be cured, she does not identify any additional facts she can allege to refute the conclusion her claims are time-barred as a matter of law.  (See *Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1081 ["plaintiff has the burden of proving that an amendment would cure the defect"].)  Accordingly, the Bank's demurrer was properly sustained without leave to amend.

## DISPOSITION

The order dismissing the action is affirmed.  The parties are to bear their own costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

SMALL, J. *

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.