Filed 6/21/23  Simons v Signature Estate & Investment Advisors CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| JORDAN SIMONS et al., | B320114 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV38728) |
| v. | |
| SIGNATURE ESTATE & INVESTMENT ADVISORS, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dennis L. Landin and Lawrence P. Riff, Judges. Affirmed.

Joshua R. Furman Law and Joshua R. Furman for Plaintiff and Appellant.

Tadjedin Thomas & Engbloom Law Group, Wendy M. Thomas and Betty T. Huynh for Defendants and Respondents Signature Estate & Investment Advisors, LLC and Jennifer Kim.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez and David Samani for Defendants and Respondents Citadel Law Corporation and Daniel C. Hales.

————————————————

Jordan and Benjamin Simons (the Simonses) appeal from the March 14, 2022 judgment of dismissal in favor of Signature Estate & Investment Advisors, LLC and Jennifer Kim (collectively, the Signature defendants) after the trial court sustained the demurrer filed by the Signature defendants and another demurrer filed by Citadel Law Corporation and Daniel C. Hales (collectively, the Citadel defendants).

The Simonses' sole contention on appeal is that the trial court erred in finding they did not have standing under the Unfair Competition Law (Bus. & Prof. Code,[1] § 17200 et seq.; UCL) to redress conduct by the Signature and Citadel defendants in preparing a trust for the Simonses' father, Herbert Joseph Simons, which reduced the children's inheritance.  Because the Simonses have not suffered economic injury from the alleged conduct of the Signature defendants, we affirm the March 14, 2022 judgment as to those defendants.  With respect to the Citadel defendants, the Simonses failed to appeal from the March 10, 2022 judgment of dismissal in favor of those defendants.  We therefore dismiss the appeal as to the Citadel defendants.

---

[1]     Further statutory references are to the Business and Professions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Allegations of the First Amended Complaint*

On October 8, 2020 the Simonses filed this action against the Signature and Citadel defendants, alleging torts arising from estate planning services provided to Herbert.[2] After the trial court[3] sustained demurrers filed by the Signature defendants and the Citadel defendants with leave to amend, the Simonses filed a first amended complaint alleging unfair business practices, unauthorized practice of law, tortious interference with contract, and tortious interference with prospective economic advantage.

The first amended complaint alleged Herbert had three adult children from his first marriage: Jordan, Jennifer, and Benjamin. In 2012 Herbert established a trust for the benefit of Jordan and Jennifer and named them as successor cotrustees upon his death. The 2012 trust provided Sharon Alfers, Herbert's third wife, with only a life estate in the couple's home. Jordan and Jennifer were to receive the residue of the trust, which included significant assets. Benjamin, who was under a conservatorship, was excluded from the 2012 trust to preserve his access to public assistance for his special needs. Contemporaneous with the establishment of the 2012 trust, Herbert, Jordan, and Jennifer agreed Jordan and Jennifer would use part of their inheritance to provide for Benjamin.

Kim is a senior partner with Signature, and she holds herself out as a financial advisor and licensed insurance broker.

---

[2]   We refer to the Simons family members by their first names to avoid confusion.

[3]   Judge Dennis L. Landin.

She has never been licensed to practice law. Hales is an attorney licensed to practice law in California, and he is the president of Citadel. The operative complaint alleged "Citadel is a law firm that engages in volume practice of preparing estate plans, sometimes referred to as a 'trust mill.'" Further, Citadel maintains relationships with several firms, paralegals and financial advisors, such as Kim, designated by Citadel as "'Certified Citadel Estate Planners,'" or "'CCEPP['s],'" "to funnel business from these respective practices to Citadel for low-cost preparation of trusts, wills, and other estate planning documents."

Sometime after 2012 Kim advised Herbert to revise his estate plan. Kim prepared an intake form for Citadel's use based on her interview with Herbert and Alfers. Kim identified herself on the intake form as a "'Citadel Associate,'" and she indicated the couple needed a "'Married Couple, ABC (QTIP) Trust.'" The intake form stated Alfers would be the initial trustee if Herbert predeceased her. It listed Herbert's children and Alfers's children as the "'primary beneficiaries,'" with Jordan and Jennifer each receiving 50 percent of Herbert's estate (but only after Alfers's death). The intake form stated Benjamin had "'special needs.'" The section describing any existing trust was left blank, stating only, "'Copy of Trust must be submitted.'" The intake form did not list Herbert's 2012 trust, and the 2012 trust instrument was not submitted to Hales or Citadel. Further, Herbert and Alfers never spoke to Hales or anyone at Citadel concerning the content of the intake form.

Herbert and Alfers signed a Citadel fee agreement, as instructed by Kim, stating a fee of $1,300 would be charged for the preparation of a "'[c]omprehensive [e]state [p]lan'" plus $195

4

for "'ABC.'"  No one signed the fee agreement form on behalf of Hales, Citadel, or Signature.  "Herbert and Alfers never spoke to Hales or anyone else at Citadel concerning the purported 2019 estate plan, the conflicts created by it, the efficacy of the purported 2019 estate plan in light of Herbert's 2012 trust, [or] how Benjamin would be cared for under the purported 2019 estate plan."  Citadel billed Herbert $1,300 for "'The Herbert Joseph Simons Living Trust,'" $160 for "'[r]evocation,'" and $160 for "'QTIP,'" for a total of $1,620.  Signature sent Herbert "an invoice for $1,000 for work described as 'Estate Plan-Jennifer Kim.'" (Capitalization omitted.)  Herbert paid the Signature and Citadel fees.

At a June 20, 2019 meeting, Kim presented Herbert and Alfers "with approximately 144 pages of estate planning documents prepared by Citadel and advised them to sign."  Kim was one of the witnesses and the notary for the signing of the 2019 trust instrument.  Under the 2019 trust, Alfers became the successor trustee after Herbert's death, and she received the entire estate subject to certain limitations.  As alleged, "Herbert's children only receive a part of Herbert's estate if anything is left when Alfers dies.  The purported 2019 trust left Benjamin's care as an unfunded mandate for Jordan and Jennifer to handle out of their personal assets."  Further, "[t]he purported 2019 trust itself states that Herbert had established a special needs trust for the benefit of Benjamin, but Herbert had never done so.  Hales and Kim did not ascertain the dire circumstances the purported 2019 trust presented for Benjamin, or provide any advice on the matter."

On Kim's instruction, Herbert signed a funding waiver indicating "Herbert had received legal advice on titling property

5

to the trust." However, Herbert never spoke with Hales or any other attorney about the funding waiver. Similarly, Kim directed Herbert to sign a waiver of conflicts agreement even though Herbert never spoke with Hales or any other attorney about potential conflicts of interest between Herbert and Alfers. Kim also advised Herbert to sign a purported revocation of his 2012 trust. But "[i]t was clear that Herbert did not believe that there had been any purported revocation of the 2012 trust because shortly after this alleged signing, Herbert appeared at a Wells Fargo bank branch and signed a certification of the 2012 trust."

Herbert died on August 29, 2019. Jordan and Benjamin were not aware that the 2012 trust had been purportedly revoked and replaced by the 2019 trust until Alfers filed a petition with the probate court on October 8, 2019. Moreover, "Jordan and Alfers are presently engaged in litigation challenging the purported 2019 trust. The outcome of that action may be dispositive of certain or all damage claims presented here. However, despite requests Plaintiffs were unable to secure tolling agreements from all Defendants in order to forestall filing of ligation pending the outcome of the probate litigation."

The first cause of action for unfair business practices under the UCL alleged, "Kim and Signature . . . held themselves out as estate planning specialists and associates of Citadel. Citadel and Hales aided and abetted this practice by allowing and encouraging Kim and Signature to do so for the purposes of generating additional volume business for Citadel's 'trust mill.'" The Citadel defendants "encouraged and authorized Kim and Signature to hold themselves out as 'Citadel Associates' and 'Certified Citadel Estate Planners[,]' and Kim and Signature did so." The defendants engaged in unfair business practices by

entering "into a joint enterprise for the unauthorized practice of law and deception of clients who think they are engaging legitimate legal services." The Simonses alleged they "lost their inheritance and supportive funds from their father Herbert, which funds should be paid by Defendants as restitution." They also sought a preliminary and permanent injunction to prevent the Signature and Citadel defendants from engaging in unlawful and unfair business practices.

B.      *The Demurrers to the First Amended Complaint*

On June 18, 2021 the Signature defendants filed a demurrer to the first amended complaint. As to the first cause of action for unfair business practices, the Signature defendants argued the Simonses did not have standing because they were not clients of the Signature defendants. Further, the unfair business practices claim failed because it was premised on the alleged unauthorized practice of law, and the Simonses "do not have a private cause of action or standing to assert this claim." The Signature defendants also argued the Simonses' "alleged expected future inheritance is conjectural and does not constitute an injury-in-fact" under section 17204.

On June 21, 2021 the Citadel defendants filed their demurrer, in which they similarly challenged the Simonses' standing to assert their UCL causes of action. The Citadel defendants also maintained they did not owe a duty to the Simonses as potential beneficiaries because they had not alleged Herbert's testamentary intent. The Citadel defendants argued further Hales is an active member of the California State Bar, and therefore, they did not commit the unauthorized practice of law; there is no statutory basis for a claim of aiding and abetting

7

the unauthorized practice of law; and the Simonses lacked standing because they did not obtain any services from the Citadel defendants.

C.    *The Trial Court's Rulings and Judgments*

After a hearing, on September 29, 2021 the trial court[4] sustained both demurrers to the first cause of action for violations of the UCL and the second cause of action for the unauthorized practice of law without leave to amend.  The court found the Simonses did not have standing to bring a UCL cause of action because they did not use the defendants' services.  Further, the Simonses did not have standing to sue the Signature defendants for the unauthorized practice of law or to sue the Citadel defendants for "'aiding and abetting'" Kim because the Simonses did not allege Herbert intended to provide a benefit to Jordan and Benjamin through the 2019 estate plan and, therefore, the Signature and Citadel defendants did not owe them a duty.[5]  The trial court also sustained the demurrers to the third

---

[4]    Judge Landin.

[5]    The trial court explained that a plaintiff could bring a cause of action for the unauthorized practice of law by alleging an unlicensed practitioner provided negligent work that caused injury to an intended beneficiary, citing *Biakanja v. Irving* (1958) 49 Cal.2d 647.  In sustaining the initial demurrers to the second cause of action for the unauthorized practice of law with leave to amend, the trial court likewise found the Simonses had failed to allege the Signature and Citadel defendants owed them a duty as intended beneficiaries because they did not allege Herbert's intent to benefit them.  In denying leave to amend in sustaining the demurrers to the first amended complaint, the court

8

cause of action for tortious interference with contract and the fourth cause of action for tortious interference with prospective economic advantage with leave to amend.

The Simonses elected not to amend their complaint. On November 2, 2021 the Signature defendants moved to dismiss the third and fourth causes of action, and the Citadel defendants filed a joinder in the motion. On February 14, 2022 the trial court granted the unopposed motion to dismiss.

On March 10, 2022 the trial court[6] signed and filed an order of dismissal entering judgment in favor of the Citadel defendants (March 10 judgment). On March 14, 2022 the court signed and filed an order of dismissal entering judgment in favor of the Signature defendants (March 14 judgment). On April 11, 2022 the Simonses filed their notice of appeal stating the appeal was from a March 14, 2022 "[j]udgment of dismissal after an order sustaining a demurrer." On July 12, 2022 the Citadel defendants moved to dismiss the appeal, arguing the Simonses

_____

explained, "Plaintiffs were previously granted leave to amend; they failed to cure the defects noted in the Complaint; and in opposition, Plaintiffs have not shown a reasonable possibility of stating a successful claim." The Simonses do not assert in their appellate briefs any arguments why the trial court erred in sustaining the demurrers to their second cause of action for unauthorized practice of law without leave to amend. They have therefore abandoned the issue on appeal. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal "deemed waived"]; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 [""""Issues not raised in an appellant's brief are [forfeited] or abandoned."""].)

[6]     Judge Lawrence P. Riff.

failed to file a notice of appeal as to the March 10 judgment, and the period to timely appeal from that judgment had expired.

## DISCUSSION

A. *We Have No Jurisdiction To Consider the Simonses' Appeal from the March 10, 2022 Judgment*

"Once a notice of appeal is timely filed, the liberal construction requirement compels a reviewing court to evaluate whether the notice, despite any technical defect, nonetheless served its basic function—to provide notice of who is seeking review of what order or judgment—so as to properly invoke appellate jurisdiction." (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 883; accord, *In re Joshua S.* (2007) 41 Cal.4th 261, 272 ["'notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced'"]; see Cal. Rules of Court, rule 8.100(a)(2) ["The notice of appeal must be liberally construed. The notice is sufficient if it identifies the particular judgment or order being appealed."].)

But "[t]he policy of liberally construing a notice of appeal in favor of its sufficiency) . . . does not apply if the notice is so specific it cannot be read as reaching a judgment or order not mentioned at all." (*Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173; accord, *DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43 ["'[W]here several judgments and/or orders occurring close in time are separately appealable (e.g., judgment and order awarding attorney fees), each appealable judgment and order must be expressly specified—in either a single notice of

10

appeal or multiple notices of appeal—in order to be reviewable on appeal.'"]; *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 47 ["The rule favoring appealability in cases of ambiguity cannot apply where there is a clear intention to appeal from only part of the judgment or one of two separate appealable judgments or orders."].) "'"Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from." [Citation.] We have no jurisdiction over an order not mentioned in the notice of appeal.'" (*In re J.F.* (2019) 39 Cal.App.5th 70, 75; accord, *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170.)

In their April 11, 2022 notice of appeal, the Simonses stated they were appealing from the March 14 judgment in favor of the Signature defendants. In their May 24, 2022 amended civil case information statement, the Simonses likewise wrote "Mar[.] 14, 2022" as the "date of entry of judgment or order appealed from." Although they attached both the March 10 and March 14 judgments to their amended civil case information statement, this did not confer jurisdiction on this court to consider the March 10 judgment because the notice of appeal only specified they were appealing from the March 14 judgment. (*Morton v. Wagner* (2007) 156 Cal.App.4th 963, 967 ["Despite appellant's statement to the contrary in the civil case information statement, he has not appealed the judgment granting the petition for an injunction. His notice of appeal identifies only the order denying the motion for reconsideration and designating him a vexatious litigant as the order from which the appeal is taken. While a notice of appeal must be liberally construed, it is the notice of appeal which defines the scope of the appeal by identifying the particular judgment or order being appealed."].)

11

In their opposition to the motion to dismiss the appeal, the Simonses admitted they only "identified the latter of the judgments of dismissal" (the March 14 judgment), but they argued "[a]ny party that received a Notice of Appeal of a judgment of dismissal following sustaining of demurrer is on notice that the order sustaining the demurrer is subject to review pursuant to that Notice of Appeal." This argument misses the point. First, the notice of appeal only identified the March 14 judgment against the Signature defendants, which by no means placed the Citadel defendants on notice the Simonses were appealing the court's order sustaining the Citadel defendants' demurrer and entry of the March 10 judgment. Moreover, because the Simonses in their notice of appeal failed to mention the March 10 judgment, instead clearly specifying their intent to appeal from the March 14 judgment, we lack jurisdiction to consider the Simonses' appeal from the March 10 judgment. (*Morton v. Wagner, supra*, 156 Cal.App.4th at p. 967; see *In re J.F., supra*, 39 Cal.App.5th at p. 75; *Faunce v. Cate, supra*, 222 Cal.App.4th at p. 170.) Accordingly, we grant the Citadel defendants' motion to dismiss the appeal as to them.

B.     *The Trial Court Did Not Err in Sustaining the Signature Defendants' Demurrer Without Leave To Amend*
        1.     *Standard of review*
"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) When evaluating the complaint, "we assume the truth of the

12

allegations." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209; accord, *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.) "However, we are not required to accept the truth of the factual or legal conclusions pleaded in the complaint." (*Marina Pacific Hotel and Suites, LLC v. Fireman's Fund Insurance Co.* (2022) 81 Cal.App.5th 96, 105; accord, *Mathews*, at p. 768 ["'"""We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law."""""].)

2.      *The Simonses lack standing to bring an Unfair Competition Law cause of action*

"The UCL prohibits unfair competition, defined as 'any unlawful, unfair or fraudulent business act or practice.' (§ 17200.) The statute's 'purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'" (*Abbott Laboratories v. Superior Court* (2020) 9 Cal.5th 642, 651.) "'By proscribing "any unlawful" business practice, "section 17200 'borrows' violations of other laws and treats them as unlawful practices" that the unfair competition law makes independently actionable.'" (*Abbott*, at p. 651; accord, *De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 980; *Law Offices of Matthew Higbee v. Expungement Assistance Services* (2013) 214 Cal.App.4th 544, 555 (*Higbee*) ["we see no reason why the alleged violation of statutes concerning the unauthorized practice of law cannot serve as a predicate for Higbee's UCL action"].) "In addition, a practice that is unfair or fraudulent may be the basis for a UCL action even if the conduct is 'not specifically proscribed by some other law.'" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1125; accord, *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370.) "'Actions for relief'

under the UCL may be brought by various government officials and 'by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.'" (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 954; accord, *Abbott*, at p. 652.)

In 2004 the voters approved Proposition 64 (Gen. Elec. (Nov. 2, 2004)), which substantially modified the standing requirements for private parties to bring UCL claims, stating in its preamble that the measure was intended to redress abuses by private attorneys who "'[f]ile frivolous lawsuits as a means of generating attorney's fees without creating a corresponding public benefit,' '[f]ile lawsuits where no client has been injured in fact,' '[f]ile lawsuits for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant,' and '[f]ile lawsuits on behalf of the general public without any accountability to the public and without adequate court supervision.'" (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228, quoting Prop. 64, § 1, subd. (b)(1)-(4).) The measure amended the standing requirements in section 17204, which previously authorized lawsuits by any person "'acting for the interests of itself, its members or the general public,'" and replaced the language with the phrase, "'who has suffered injury in fact and has lost money or property as a result of unfair competition.'" (*Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 788 (*Clayworth*); compare former § 17204, as amended by Stats. 1993, ch. 926, § 2 with § 17204, as amended by Prop. 64, § 3, as approved by voters, Gen. Elec. (Nov. 2, 2004).)

To satisfy Proposition 64's more stringent standing requirements, a plaintiff must "(1) establish a loss or deprivation

of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322 (*Kwikset*); see *Zhang v. Superior Court, supra*, 57 Cal.4th at p. 372 ["[T]o bring a UCL action, a private plaintiff must be able to show economic injury caused by unfair competition."].) Proposition 64 expressly incorporates the federal law standing requirements for "injury in fact." (*Kwikset*, at p. 322.) "Under federal law, injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" [citation].' [Citations.] 'Particularized' in this context means simply that 'the injury must affect the plaintiff in a personal and individual way.'" (*Kwikset*, at pp. 322-323; accord, *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 731-732 [plaintiff pleaded sufficient injury in fact where she was billed for monthly loan payments that exceeded what she should have owed].) Economic injury from unfair competition may be shown in "innumerable ways," including where the plaintiff has "a present or future property interest diminished" or is "deprived of money or property to which he or she has a cognizable claim." (*Kwikset*, at p. 323; accord, *Invanoff*, at p. 731.)

The Signature defendants argue, as they did in the trial court, that a plaintiff must have had business dealings with a defendant to have standing in a consumer claim for unfair business practices, relying on the language in *Kwikset* and *Clayworth* describing the voters' intent in approving Proposition 64. (See *Kwikset, supra*, 51 Cal.4th at p. 317 ["We conclude

15

Proposition 64 should be read in light of its apparent purposes, i.e., *to eliminate standing for those who have not engaged in any business dealings with would-be defendants* and thereby strip such unaffected parties of the ability to file 'shakedown lawsuits,' while preserving for actual victims of deception and other acts of unfair competition the ability to sue and enjoin such practices."], italics added; *Clayworth, supra*, 49 Cal.4th at p. 788 [intent of Proposition 64 "was to confine standing to those actually injured by a defendant's business practices and to curtail the prior practice of filing suits on behalf of """clients who have not used the defendant's product or service, viewed the defendant's advertising, *or had any other business dealing with the defendant*""], italics added.)

However, as the Simonses point out, the Supreme Court in *Kwikset, supra*, 51 Cal.4th at page 322 articulated only two requirements post-Proposition 64 for private UCL standing: that the plaintiff show economic injury and that the economic injury was caused by the defendant's unfair business practice. Nowhere in section 17204 or in *Kwikset* is there an additional requirement that the plaintiff must have had "business dealings" with the defendant to have standing. As the Court of Appeal explained in *Higbee, supra*, 214 Cal.App.4th at page 563, "To be sure, the Supreme Court in *Clayworth v. Pfizer, Inc., supra*, 49 Cal.4th 758 observed that the intent of Proposition 64 was to restrict UCL standing. (*Id.* at p. 788.) However, in commenting that the voters had 'plainly preserved standing for those who had had business dealings with a defendant' (*ibid*.), we do not believe the court intended to engraft upon section 17204 a requirement that all plaintiffs must, in every event, have engaged in business dealings with a defendant in order to demonstrate UCL

16

standing." (See *Allergan, Inc. v. Athena Cosmetics, Inc.* (Fed. Cir. 2011) 640 F.3d 1377, 1383, ["Proposition 64 did not add a 'business dealings requirement' to standing under section 17204."].)

Although we agree with the Simonses that there is no "business dealings" requirement for private UCL standing, the Simonses have still not alleged injury in fact under section 17204. As the Simonses admit in their first amended complaint, "Jordan and Alfers are presently engaged in litigation challenging the purported 2019 trust. The outcome of that action may be dispositive of certain or all damage claims presented here." The probate court has not determined whether the 2012 trust or the 2019 trust controls. Thus, the Simonses have not "establish[ed] a loss or deprivation of money or property sufficient to qualify as injury in fact" for UCL standing. (*Kwikset, supra*, 51 Cal.4th at p. 322.)[7] Rather, at this point, their potential injury as beneficiaries under the 2012 trust is "'conjectural' or 'hypothetical'" because the probate court may well decide Herbert

---

[7] At oral argument, counsel for the Simonses argued that the need to litigate the invalidity of the 2019 trust in the probate court action constituted an injury in fact sufficient to support UCL standing. We do not reach this contention because the Simonses failed to make the argument in the trial court or in their appellate briefing. Therefore, the issue is forfeited. (See *Tiernan v. Trustees of Cal. State University & Colleges, supra*, 33 Cal.3d at p. 16, fn. 4; *Swain v. LaserAway Medical Group, Inc., supra*, 57 Cal.App.5th at p. 72; see *Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1013 ["'Failure to raise specific challenges in the trial court forfeits the claim on appeal.'"].)

did not in 2019 rescind the 2012 trust instrument. (See *id*. at pp. 322-323.)[8]

---

[8] The Simonses alleged they had to bring their UCL claim because the Signature and Citadel defendants refused to enter into tolling agreements pending the outcome of the probate litigation. But the four-year statute of limitations for a UCL claim does not run until the cause of action has accrued. (§ 17208 [UCL claim "shall be commenced within four years after the cause of action accrued"].) "[T]he UCL is governed by the common law accrual rules to the same extent as any other statute." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1196; accord, *Ivanoff, supra*, 9 Cal.App.5th at p. 732.) "Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' [Citations.] This is the 'last element' accrual rule: ordinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action.'" (*Aryeh*, at p. 1191; accord, *Paredes v. Credit Consulting Services, Inc.* (2022) 82 Cal.App.5th 410, 427.) Because the Simonses have not yet suffered harm, their potential UCL cause of action has not accrued to trigger the four-year statute of limitations.

## DISPOSITION

The appeal as to the Citadel defendants is dismissed.  The March 14, 2022 judgment in favor of the Signature defendants is affirmed.  The Citadel and Signature defendants are entitled to recover their costs on appeal.

FEUER, J.

We concur:

PERLUSS, P. J.

ESCALANTE, J.*

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19