Filed 3/19/26  Seaker & Sons v. Cushman & Wakefield of Cal. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| SEAKER & SONS,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>CUSHMAN & WAKEFIELD OF CALIFORNIA, INC.,<br><br>　　Defendant and Respondent. | B340850<br><br>(Los Angeles County<br>　Super. Ct. No. 23STCV17644) |

　　APPEAL from a judgment of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Reversed with directions.

　　Mann Legal Team Inc., James White and Elizabeth Mann; Complex Appellate Litigation Group, Ben Feuer and Charles M. Kagay for Plaintiff and Appellant.

　　Mayer Brown, Ruth Zadikany, Daniel D. Queen, C. Mitchell Hendy and Michael A. Scodro for Defendant and Respondent.

## INTRODUCTION

Appellant Seaker & Sons (Seaker), a commercial landlord, was compelled to reimburse a tenant for improvements constructed by that tenant without permits.  Seaker sued its property manager, respondent Cushman & Wakefield of California, Inc. (Cushman), for allowing the unpermitted construction to proceed.  Seaker asserted both tort and breach of contract claims.

Cushman demurred, arguing Seaker had hired another agent to oversee the improvements and its tort claims were barred by the economic loss rule.  The trial court agreed, and sustained the demurrer without leave to amend.  We conclude the tort claims are barred by the economic loss rule, but the breach of contract claim is properly pled.  Therefore, we reverse with directions.

## FACTS AND PROCEDURAL BACKGROUND

In July 1994, Seaker hired Cushman to manage a commercial property known as the Gumps Building, located at 135 Post Street in San Francisco.[1] The relationship between Seaker and Cushman is governed by a written "Management Agreement".  The Management Agreement designates Cushman "the sole [a]gent for management" of the Gumps Building and requires Cushman to inform Seaker of any violations of "federal[,] state or municipal authority" affecting the building.  Cushman must also offer "advice and consultation" for any "ordinary repairs" conducted by tenants, but may not allow tenants to make such repairs without the consent of Seaker.

---

[1]     Because a demurrer admits all properly pled allegations of the operative complaint, we draw our statement of facts from those allegations and matters subject to judicial notice.  (*Brown v. Deutsche Bank National Trust Co.* (2016) 247 Cal.App.4th 275, 279 (*Brown*).)

I.     *Lease and Construction*

In December 2019, Seaker leased the third and fourth floors of the Gumps Building to App Annie, Inc. (App Annie) for office space. The lease included a "Work Agreement" intended to govern improvements App Annie would make to its portion of the building. Seaker agreed to reimburse App Annie for the cost of these improvements, up to the amount of $2,615,400.

The Work Agreement provided that App Annie could not begin construction until it had "procured and delivered" to Seaker "a copy of all [p]ermits." Construction was to be complete by February 1, 2021; App Annie could not claim reimbursement for work performed after that date. Seaker designated an architect, Koonshing Wong, as its "sole representative" with respect to the improvements, "who, until further notice to [App Annie], shall have full authority and responsibility to act . . . as required in this Work Agreement." App Annie was required to use Wong's firm, WZ Architecture, to obtain permits and for all communications with the City of San Francisco.

App Annie applied for permits in June 2020. No permits were ever issued. After waiting a month or two, App Annie began construction without them. By December 2020, the work was substantially complete.

II.     *Arbitration*

In February 2021, App Annie filed a complaint seeking rescission of the lease. Seaker and App Annie stipulated to arbitration. In January 2022, the arbitrator ruled for App Annie.

The arbitrator found the lease had been the product of a mutual mistake: both Seaker and App Annie had thought the Gumps Building was zoned for office space, when in fact it had been recently rezoned for retail use only. This was the reason App Annie had been unable to obtain permits. The

3

arbitrator decided Seaker was obliged to return App Annie to its pre-contract position, requiring Seaker not only to return App Annie's security deposit, but also reimburse App Annie for all construction expenses. The resulting damages award was $6,612,332.36, plus prejudgment interest and attorney's fees, for a total of $7,795,134.25.

The award was confirmed by the San Francisco Superior Court, and the confirmation order was affirmed on appeal.

### III.    *Present Litigation*

Shortly thereafter, Seaker filed a complaint against Cushman, asserting causes of action for professional negligence, breach of fiduciary duty, and breach of contract. Seaker subsequently filed an amended complaint, asserting the same claims. Cushman demurred to the amended complaint, and the trial court sustained the demurrer, with leave to amend.

Seaker timely filed a second amended complaint (SAC), asserting the same causes of action. Specifically, Seaker alleged Cushman was its sole agent with respect to App Annie's improvements, and was professionally negligent in failing to either (a) inform App Annie that the improvements could not commence without permits, or (b) inform Seaker that App Annie had commenced construction without permits. Seaker alleged that these failures also constituted a breach of fiduciary duty and a breach of the Management Agreement. Additionally, Seaker alleged Cushman breached the Management Agreement by affirmatively authorizing App Annie to proceed with construction.

Cushman demurred again, raising three central arguments. First, Cushman argued the Work Agreement made Wong Seaker's sole agent concerning the improvements, not Cushman. Second, Cushman claimed

4

there was no causation: the harm was caused by Seaker's entry into the lease without understanding how its own building was zoned. Third, Cushman contended it had no fiduciary relationship with Seaker related to the improvements, and any tort claims were barred by the economic loss rule.

The trial court sustained Cushman's demurrer, without leave to amend. The court ruled that Cushman did not cause Seaker's harm. The court further held that Cushman owed no fiduciary duty to Seaker with respect to App Annie's improvements, and concluded the economic loss rule barred Seaker's tort claims.

The court entered judgment of dismissal on July 9, 2024. Seaker timely appealed.

## DISCUSSION

We review the sustention of a demurrer de novo. (*Brown, supra*, 247 Cal.App.4th at p. 279.) We review the decision to deny leave to amend for abuse of discretion. (*Ibid.*) The plaintiff has the burden of showing a reasonable possibility that any defect could be cured by amendment. (*Ibid.*)

On appeal from an order sustaining a demurrer, the plaintiff may raise legal theories not presented below. (*Kruitbosch v. Bakersfield Recovery Services, Inc.* (2025) 114 Cal.App.5th 200, 210.) Because we review the trial court's ruling and not its rationale, and a demurrer presents questions of law, the defendant may do likewise. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 732, fn. 2.) Finally, the issue of leave to amend remains open on appeal, even if leave was not sought below. (Code Civ. Proc., § 472c, subd. (a).)

5

I.    *Professional Negligence*

A claim for professional negligence has four elements: (1) the duty of a professional to use the skill and care commonly used by other professionals in the same field, (2) breach of that duty, (3) causation, and (4) damages.  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 (*Oasis West*).)

The SAC alleges Cushman failed to notify App Annie and its contractors that they were required to obtain permits, and failed to notify Seaker that App Annie was constructing improvements without permits.  The SAC further alleges that, had Cushman taken either of those steps, App Annie could have been prevented from going forward with the improvements, lowering the amount of the reimbursement Seaker would have been required to pay.  Cushman argues this claim is barred by the economic loss rule.  Cushman is correct.

The economic loss rule has two branches.  First, it provides that there is no general duty to avoid the infliction of economic losses, meaning there can be no negligence claim for such losses.  (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 922 (*Sheen*).)  Second, it provides that where litigating parties have a pre-existing contractual relationship, their obligations and potential recovery are defined by the terms of the contract, rather than tort law.  (*Id.* at pp. 922–924.)  Because Seaker and Cushman had a contractual relationship, and Seaker's claim arises out of that relationship, the second branch of the rule applies here.  (*Id.* at pp. 923–924.)

Seaker argues the economic loss rule does not govern professional negligence claims, relying on language in *Sheen* and *Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1 (*Rattagan*) to the effect that in "some" professional negligence cases, where there is a "special relationship" between the parties, the economic loss rule does not apply.  (*Sheen, supra,* 12 Cal.5th

at pp. 929–933; *Rattagan, supra,* 17 Cal.5th at p. 23, fn. 5.) Such "special relationships" exist between an insured and their insurer, or an attorney and their client. (*Rattagan, supra,* 17 Cal.5th at p. 23, fn. 5.) This is not one of those circumstances, and in the absence of authority, we decline to expand the scope of the exception.

These "special relationships" represent a "major departure" from ordinary legal principles, and any extension of that departure requires "great care." (*Sheen, supra,* 12 Cal.5th at pp. 929–930.) Insurance contracts are "unique in nature and purpose" and involve an inherent conflict between the financial interests of the insurer and insured. (*Id.* at p. 930.) Attorneys owe independent duties created by the Rules of Professional Conduct that cannot be modified by any contract. (See *Rattagan, supra,* 17 Cal.5th at p. 23.) Property managers are not similarly regulated, nor do their contracts share the unique features of insurance policies.

## II.     *Breach of Fiduciary Duty*

To state a claim for breach of fiduciary duty, a plaintiff must allege the existence of a fiduciary relationship, a breach of the fiduciary's duties, and resulting damages. (*Oasis West, supra,* 51 Cal.4th at p. 820.)

The SAC asserts two causes of action for breach of fiduciary duty, on alternative theories. First, the SAC alleges Cushman was Seaker's agent for management of the Gumps Building, and therefore had fiduciary obligations with respect to the building. Second, the SAC alleges Cushman voluntarily undertook to manage the App Annie improvements for Seaker. Cushman argues App Annie's Work Agreement specifically named a different agent for Seaker, and the SAC does not allege how Cushman undertook a fiduciary

7

duty.  Cushman also argues these claims are barred by the economic loss rule.  We agree with Cushman.

An agent's fiduciary duties are limited to matters within the scope of its agency.  (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 632 & fn. 8.)  While the Management Agreement calls for Cushman to manage "ordinary repairs" by tenants, it does not permit Cushman to authorize tenants to make any such repairs, unless they are made solely at the tenant's expense.[2]  App Annie's improvements were clearly not ordinary repairs, nor were they to be made at App Annie's sole expense.  And the Work Agreement named Wong, not Cushman, as Seaker's sole agent for App Annie's project.  The SAC expressly concedes Cushman is not a party to, nor mentioned in, App Annie's lease.  Nothing in the relevant contracts indicates that Cushman was Seaker's agent with respect to App Annie's improvements.

Nor does the SAC specify how Cushman "assumed" that role.  It alleges that, at some unspecified point, the parties agreed to substitute a different architect in place of Wong.  But this does not explain how any authority was delegated to or otherwise placed with Cushman.[3]

Even without those deficiencies, these claims are barred by the economic loss rule, as explained above.  On this point, Seaker argues that a fiduciary relationship is the sort of "special relationship" that obviates the

---

[2]     Seaker did not attach the Management Agreement to any of its pleadings, nor was it the subject of any request for judicial notice.  Therefore, we rely on the summaries and short quotations provided by the SAC.

[3]     At one point the SAC alleges Cushman was duty-bound to report to Wong, rendering the prospective chain even more unclear.

economic loss rule. (*Rattagan, supra,* 17 Cal.5th at p. 23, fn. 5.) But none of the authorities Seaker cites support that proposition.

Only one of the cases Seaker relies on, *Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, discusses the economic loss rule. There, the California Supreme Court held that businesses could not recover lost income caused by the Southern California Gas Company's failure to prevent a gas leak that necessitated the relocation of an entire neighborhood. (*Id.* at pp. 394–397.) That case is factually distinct from this one, and it dealt with the other branch of the economic loss rule, refusing to impose a general tort duty on the Gas Company to prevent purely economic losses. (*Id.* at pp. 397–398; see *Sheen, supra,* 12 Cal.5th at p. 922.) In the absence of on-point authority, we decline to adopt Seaker's position.

## III.   *Breach of Contract*

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages." (*Oasis West, supra,* 51 Cal.4th at p. 821.) The SAC alleges three breaches: first, that Cushman "authorized" App Annie to proceed with the improvements, second, that Cushman failed to direct App Annie to halt construction, and third, that Cushman failed to report App Annie's construction to Seaker.

Cushman argues it had no responsibility to supervise App Annie's construction, noting the contractual appointment of Wong as Seaker's sole representative for that project and the lack of any statement indicating how or when Cushman replaced Wong. Cushman also claims it could not have caused Seaker's damages. Neither argument is compelling.

9

As noted above, the Management Agreement contains a provision that prevents Cushman from authorizing tenant construction in the Gumps Building, except under certain conditions not met here. The allegation that Cushman nevertheless authorized App Annie to proceed with construction clearly identifies a breach of the Management Agreement. Likewise, the Management Agreement requires Cushman to report any violations of "federal[,] state or municipal authority" affecting the Gumps Building. Cushman does not dispute that App Annie's unpermitted construction would qualify as a violation of municipal authority. The allegation that Cushman failed to report this to Seaker clearly identifies another breach of the Management Agreement. These breaches do not depend on any determination of who was responsible for oversight of App Annie's particular construction project.

Nor do the facts pled negate causation. Cushman argues the harm was caused by Seaker's entry into a voidable contract and App Annie's decision to rescind that contract. Yet "events generally have multiple causes," and the existence of other dependent causes does not by itself absolve Cushman. (*Malo v. Willis* (1981) 126 Cal.App.3d 543, 548.) Cushman points out that the Work Agreement required delivery of permits before construction commenced and that Seaker knew construction had commenced, reasoning that Seaker must therefore have known there were no permits. This argument assumes the permits were to be delivered directly to Seaker, rather than to its agent (whether that was Wong or Cushman or someone else). And even if accepted, the argument only negates causation with respect to the work Seaker knew

10

had been done.  Any construction beyond that could still be the result of Cushman's alleged breaches.[4]

Seaker properly pled a breach of contract.

IV.    *Leave to Amend*

Seaker bears the burden of demonstrating that any defect in its pleadings could be cured by amendment.  (*Brown, supra*, 247 Cal.App.4th at p. 279.)  Because we conclude Seaker has properly pled a claim for breach of contract, we need only consider whether Seaker can cure defects in its claims for professional negligence and breach of fiduciary duty.  The amendments suggested by Seaker would not remove those claims from the ambit of the economic loss rule.  Therefore, Seaker has failed to meet its burden of showing it can cure the defects in those claims.

---

[4]    The same logic applies to Cushman's argument that App Annie attempted to mislead Cushman.  That would only negate causation to the extent App Annie's supposed deception succeeded.

11

## DISPOSITION

The judgment of the trial court is reversed.  The trial court is directed to vacate its order sustaining the demurrer without leave to amend and enter a modified order overruling the demurrer to the cause of action for breach of contract.  Seaker shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


MORI, J.


TAMZARIAN, J.

12